1

```
                 UNITED STATES DISTRICT COURT
                 EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - X

 UNITED STATES OF AMERICA,     : 14-CR-00476(ILG)
                               :
                               :
                               :
       versus                  : United States Courthouse
                               : Brooklyn, New York
                               :
                               :
 ROBERT BANDFIELD,             : Thursday, April 16, 2015
                               : 10:30 a.m.
         Defendant.            :
                               :
                               :

- - - - - - - - - - - - - X

    TRANSCRIPT OF CRIMINAL CAUSE FOR STATUS CONFERENCE
           BEFORE THE HONORABLE I. LEO GLASSER
            SENIOR UNITED STATES DISTRICT JUDGE

                 A P P E A R A N C E S:

For the Government: LORETTA E. LYNCH, ESQ.
                      United States Attorney
                      Eastern District of New York
                        271 Cadman Plaza East
                        Brooklyn, New York 11201
                    BY: JACQUELYN M. KASULIS, ESQ.
                        IAN C. RICHARDSON, ESQ.
                        Assistant United States Attorneys

For the Defendant:  MORVILLO LLP
                      One World Financial Center
                      27th Floor
                      New York, New York 10281
                    BY: EUGENE E. INGOGLIA, ESQ.

Court Reporter:     SHERRY J. BRYANT, RMR, CRR
                      225 Cadman Plaza East
                      Brooklyn, New York 11201
                      sbryant102@verizon.net

Proceedings recorded by mechanical stenography, transcript
produced by Computer-Assisted Transcript.
```

1          (In open court.)
2          COURTROOM DEPUTY:  This is for the 10:30.  United
3  States versus Robert Bandfield and others.  It's just the one
4  defendant, Bandfield.
5          Counsel, please state your appearances.
6          MS. KASULIS:  Jacqueline Kasulis and Ian Richardson
7  for the government.  Good morning, Your Honor.
8          THE COURT:  Good morning.
9          MR. INGOGLIA:  Eugene Ingoglia of the firm Morvillo
10 for Mr. Bandfield, who is arriving now.
11         (Defendant enters courtroom.)
12         THE COURT:  Good morning.  Good morning.  I'm
13 listening.
14         MS. KASULIS:  Your Honor, so we have been in
15 discussions with Mr. Ingoglia.  He was recently retained
16 within the last couple of months.  The government has provided
17 a copy set of what had been produced previously to
18 Mr. Ingoglia, and we have produced a substantial amount of
19 discovery since that time as well.
20         We are in the process of producing what the
21 government anticipates is the last sort of significant piece
22 of discovery, which were the -- there are approximately 40
23 computers that were seized from the corporate offices of IPC
24 and associated brokerage firms in Belize.  We did produce
25 approximately half.  We're imaging those computers and

1  producing copy sets of those computers.  We've produced about
2  half of those today to defense counsel and anticipate being
3  able to produce the rest within the upcoming weeks.
4           We have discussed potentially setting down a motion
5  schedule, if Your Honor thinks that's the appropriate next
6  step here, and we have discussed some potential dates for that
7  if Your Honor would like to hear our proposed schedule.
8           THE COURT:  Sure.  Mr. Ingoglia.
9           MR. INGOGLIA:  Judge, we'd like to request
10 approximately 90 days for the defense -- from today to July
11 15th, if that's acceptable, for the defense to make any
12 motions, with about a month after that for the government to
13 respond, so that would be August 17th, and the government's
14 reply after -- I mean the defense reply after that by August
15 31st.
16          That's a schedule that is more attenuated than we'd
17 like in an ideal circumstance, but because we are still
18 receiving discovery.  And I think Ms. Kasulis accurately
19 characterized it.  It's a very, very large volume that we're
20 receiving now, the images of the computers.
21          Mr. Bandfield has been incarcerated for seven months
22 and so we very much want to move forward quickly, and we're
23 trying to balance that with the need to go through this
24 material and understand it, to make an intelligent decision on
25 motions.

PROCEEDINGS                                                            4

1        It's -- we have been working with Ms. Kasulis to try
2   to resolve our differences without having to bring anything to
3   your attention unless we're sure we disagree, but seven months
4   is a long time before getting that stuff, and he's waiting.
5   So we think this schedule strikes the right balance.
6        We also would like -- and I think the government's
7   in agreement with this -- that there be a Rule 16 discovery
8   cutoff of approximately 30 days from now so that we can have
9   the discovery in hand as we craft our motions and know what
10  we're dealing with.
11       MS. KASULIS:  Your Honor, with respect to an actual
12  cutoff, the government can certainly produce all the discovery
13  that it has in its possession in the next 30 days.  There are
14  instances, obviously, particularly when we're responding to
15  motions or prepping for trial, that there may be some
16  additional small pieces of discovery that we do obtain and
17  then, of course, produce in order to continue to gather
18  evidence in our case.
19       So the government doesn't have any objection to
20  setting some sort of a 30-day limit in terms of producing the
21  discovery in its current possession, with the caveat that
22  there may be some technical issues that we can obviously
23  discuss with Mr. Ingoglia that could prevent that 30-day
24  cutoff.  But with the caveat that if we do obtain any
25  additional discovery that we then are able to produce it to

1  Mr. Ingoglia after that time.
2           THE COURT:  Why can't you produce all the discovery?
3  What I'm hearing puzzles me.  It may be that by virtue of some
4  motion that Mr. Ingoglia may make some other discovery may
5  turn up.  You must know or will know if you don't know now
6  very quickly what is available to you and what you need by way
7  of discovery.  Turn it over in 30 days, okay?
8           MS. KASULIS:  Absolutely.  Thank you, Judge.
9           THE COURT:  And with respect to motions, I don't
10 know whether it's terribly appropriate for me to be inquiring
11 as to what motions, but I would suggest that the motions would
12 be in the nature of suppression motions, I would think.
13          MR. INGOGLIA:  That's right, Judge.  That's what we
14 anticipate.
15          THE COURT:  You probably know everything you have to
16 know about the basis for making the suppression motion now.
17 Either there were warrants or there weren't warrants.
18          MR. INGOGLIA:  With respect to one anticipated
19 suppression motion, that question is still open.  There was a
20 search in Belize that was done of some of the businesses that
21 we understand was done at the request of the U.S. authorities.
22          None of the documents about how the search was
23 conducted or the basis on which it was conducted have been
24 produced because, as I understand it, Belize has not given
25 them to the U.S. Attorney's Office.  And so we can't -- we

1    haven't seen whether there was a warrant, what the warrant
2    said, whether there was a court order or not, how the search
3    was conducted there; and without those documents, it's very
4    difficult to assess whether the search was lawful or not.
5            The fact that Belize hasn't turned it over to the
6    United States so far -- and it's now seven months since the
7    search -- is troubling and raises questions in our mind about
8    the bona fides of the search and whether it really was done
9    properly.  You know, that itself would be a subject of our
10   motion, but if there is going to be a warrant, we should see
11   it.  If there's not one, we're happy to proceed.
12           THE COURT:  I'm just thinking out loud.  I'm just
13   wondering that if a search is conducted by a foreign country,
14   would the Fourth Amendment issues be relevant so far as the
15   validity of the search being conducted by Belize?
16           MR. INGOGLIA:  They have to follow the procedure --
17   there's a procedure they have to follow.  It is not
18   necessarily the procedure that would have to be followed here
19   in the United States, that's true, but there is a procedure
20   they have to follow.
21           THE COURT:  Pursuant to what?
22           MR. INGOGLIA:  Pursuant to the Mutual Legal
23   Assistance Treaty that I understand the United States and
24   Belize had entered into and pursuant to which this request was
25   made by the United States to Belize to conduct a search.

1     MS. KASULIS:  My understanding, Your Honor, is the
2  MLAT process doesn't impose any kind of requirements on Belize
3  with respect to how they conduct a search.  The treaty just
4  allows for inquiries or requests for assistance to go through
5  certain channels in a certain manner.
6     Mr. Ingoglia is right that the government did
7  request via an MLAT request for searches of offices, corporate
8  offices in Belize, and then Belize executed those searches in
9  their own manner pursuant to our request.  That's our
10 understanding.
11    Mr. Ingoglia is right that we don't have any of the
12 underlying documents that Belize produced in order to be able
13 to search those offices.  My understanding is if the
14 government is reasonably relying on Belize and that they
15 followed their processes that our reliance is warranted.
16 There's no Fourth Amendment standard at all with respect to
17 our MLAT request to them.
18    THE COURT:  Why are you having difficulty obtaining
19 whatever documents may be relevant?
20    MS. KASULIS:  It's a good question, Your Honor.
21 We've been working with our Office of International Affairs
22 and they are coordinating with Belize 's -- their counterparts
23 in Belize to obtain those underlying documents, and we're
24 still working on it.
25    THE COURT:  Well, the only reason I'm asking these

1  questions, Mr. Ingoglia, is really in response to the
2  observations you are making, which are quite reasonable and
3  understandable.  Mr. Bandfield has been in custody for a long
4  time and I was wondering why you need 90 days to make motions.
5  If the motion is a motion to suppress, you probably know most
6  everything you need to know for purposes of a motion to
7  suppress.
8             So I was asking those questions only for the purpose
9  of attempting to bring this matter in the interests of
10 Mr. Bandfield.
11            MR. INGOGLIA:  I understand completely.  We
12 appreciate it.  If we can make them sooner, we'll make them
13 sooner.
14            In this particular issue, whether or not Belize
15 conducted their search properly under Belize law is a fair
16 question.  There were asset freezes that took place in this
17 case where a Belize court said they were done improperly or
18 there wasn't a sufficient basis for them in the same case, so
19 I'm not confident that the authorities in Belize followed
20 Belize law, but I can't evaluate it without the documents is
21 all I'm saying.
22            THE COURT:  I'm saying that, just through a memo, to
23 prepare a little memorandum and do a little research as to
24 whether the Fourth Amendment is applicable to anything that
25 may have happened in Belize, by Belize.

1    And if the request -- if the search in Belize was
2  made at the request of the United States Government, maybe by
3  virtue of that fact, being made on behalf of or in response to
4  a request by the United States Government, there may be some
5  Fourth Amendment issue by virtue of that fact, but it might
6  make sense to get that out of the way.
7            MR. INGOGLIA:  For sure, that's right.
8            THE COURT:  Maybe that would facilitate a motion in
9  one week or sometime, it won't take 90 days, to move this case
10 along with Mr. Bandfield, and the government and everybody
11 else moving along with this so nobody is being incarcerated
12 unnecessarily.
13           All right.  If there's nothing else.
14           MS. KASULIS:  Your Honor, would you like to have us
15 back here for a status conference for argument on the motions?
16           THE COURT:  By all means.  What are the dates?
17           COURTROOM DEPUTY:  We're checking, Judge.
18           MS. KASULIS:  September 8th, Your Honor.
19           COURTROOM DEPUTY:  September 8th is available,
20 10:00.
21           THE COURT:  Am I observing correctly that
22 Mr. Bandfield has a hearing problem?
23           (Counsel confers with defendant.)
24           THE DEFENDANT:  Most of it, Your Honor.
25           THE COURT:  I guess he is.  Is there something you

PROCEEDINGS                                       10

1   can do to ameliorate that situation?  Get the MDC or the
2   government to provide hearing aids or some --
3              MR. INGOGLIA:  He does have hearing aids and they
4   are on now.
5              THE DEFENDANT:  It's very difficult to hear.  I can
6   hear you and I can hear most everybody, but I can't always
7   understand what you're saying, and that's a problem.  I'll
8   make sure the batteries are charged and I've got it turned up
9   as high as I can, but it's difficult for me, very difficult.
10             THE COURT:  Okay.  Well, if there's anything that
11  the MDC or that we can do to make sure you're hearing what's
12  going on here in this courtroom, I'd be happy to try and do
13  it.  Maybe you're not understanding because what we're saying
14  is not understandable.
15             MS. KASULIS:  Thank you.  And, Your Honor, the
16  government and I'm assuming defense counsel are excluding
17  time.
18             THE COURT:  We're excluding the time.  Obviously, if
19  I'm hearing you just seized 42 computers, it's quite clearly a
20  complex case.
21             MS. KASULIS:  Thank you, Your Honor.
22             THE COURT:  So I'll exclude the time.  I take it
23  there's no dispute about that.
24             MR. INGOGLIA:  There's not, Judge.
25             THE COURT:  All right.  So I'll exclude the time

SHERRY BRYANT, RMR, CRR

PROCEEDINGS 11

1 pursuant to 3161(h), whatever the subdivision is.
2     MS. KASULIS: (7).
3     THE COURT: That's appropriate.
4     MS. KASULIS: Thank you, Judge.
5     MR. INGOGLIA: Thank you.
6     (Whereupon, the proceedings were adjourned.)

SHERRY BRYANT, RMR, CRR

```
                                                                  12
 1              I certify that the foregoing is a correct
 2    transcript from the record of proceedings in the
 3    above-entitled matter.
 4
 5                         /s/   Sherry Bryant
                           Sherry Bryant, RMR, CRR
 6                         Official Court Reporter
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```