MJSELECT–JMA

# U.S. District Court
## Eastern District of New York (Brooklyn)
## CRIMINAL DOCKET FOR CASE #: <u>1:14–cr–00476–ILG</u>–1

Case title: USA v. Bandfield et al

Date Filed: 09/08/2014
Date Terminated: 02/10/2017

Assigned to: Judge I. Leo Glasser

**<u>Defendant (1)</u>**

**Robert Bandfield**
*TERMINATED: 02/10/2017*
*also known as*
Bob Bandfield
*TERMINATED: 02/10/2017*

represented by

**Eugene E. Ingoglia**
Morvillo LLP
SDNY
One World Financial Center
27th Floor
New York, NY 10281
(212)796–6341
Fax: (212)796–8267
Email: <u>eingoglia@morvillolaw.com</u>
*TERMINATED: 02/23/2017*
*LEAD ATTORNEY*
*Designation: Retained*

**Michelle A. Gelernt**
Federal Defenders of New York
One Pierrepont Plaza, 16th Floor
Brooklyn, NY 11201
718–330–1204
Fax: 718–855–0760
Email: <u>michelle_gelernt@fd.org</u>
*TERMINATED: 02/27/2015*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Public Defender or Community Defender Appointment*

**Amy Lynn Walsh**
US Attorney's Office/EDNY
271 Cadman Plaza East
Brooklyn, NY 11201
718–254–7000
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Brian D. Myers**
Jennings Haug & Cunningham LLP
2800 North Central Avenue
Suite 1800

Phoenix, AZ 85004
602–234–7800
Fax: 602–277–5595
Email: bdm@jhc–law.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Savannah Stevenson**
Morvillo LLP
200 Liberty Street
27th Floor
New York, NY 10281
212–796–6342
Fax: 212–376–2066
Email: sstevenson@morvillolaw.com
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

| **Pending Counts** | **Disposition** |
|---|---|
| MONEY LAUNDERING – INTERSTATE COMMERCE (3ss) | Deft. sentenced to 72 months IMPRISONMENT, followed by 3 years of SUPERVISED RELEASE w/SPECIAL CONDITIONS. Deft. assessed the sum of $100.00. REC. TO BOP: 1. Deft. designated to the FCI at Sheridan, Oregon, in order to facilitate family visits. 2. Deft be permitted to participate in a residential alcohol treatment program (RDAP). 3. That deft. be provided with an appropriate hearing aid. W/A'DDL. FORFEITED PROPERTY TERMS. |

**Highest Offense Level
(Opening)**

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| Conspiracy to Commit Securities Fraud (1) | Dismissed. |
| CONSPIRACY TO DEFRAUD THE UNITED STATES (1s–2s) | Dismissed. |
| CONSPIRACY TO COMMIT SECURITIES FRAUD (1ss) | |
| Conspiracy to Defraud the United States (2) | Dismissed. |

| | |
|---|---|
| CONSPIRACY TO DEFRAUD THE UNITED STATES (2ss) | Dismissed. |
| Money Laundering Conspiracy (3) | Dismissed. |
| LAUNDERING OF MONETARY INSTRUMENTS (3s) | Dismissed. |
| SECURITIES FRAUD–VLNX (4s) | Dismissed. |
| SECURITIES FRAUD–VLNX (4ss) | Dismissed. |
| SECURITIES FRAUD–CYNK (5s) | Dismissed. |
| SECURITIES FRAUD–CYNK (5ss) | Dismissed. |

**Highest Offense Level (Terminated)**

Felony

**Complaints**                                            **Disposition**

None

**Interested Party**

**Karla and Kathy Melgaard**                  represented by   **Brian D. Myers**
                                                                                (See above for address)
                                                                                *PRO HAC VICE*
                                                                                *ATTORNEY TO BE NOTICED*
                                                                                *Designation: Retained*

**Plaintiff**

**USA**                                                     represented by   **Jacquelyn M. Kasulis**
                                                                                United States Attorneys Office
                                                                                271 Cadman Plaza East
                                                                                Brooklyn, NY 11201
                                                                                718–254–6103
                                                                                Fax: 718–254–6076
                                                                                Email: jacquelyn.kasulis@usdoj.gov
                                                                                *LEAD ATTORNEY*
                                                                                *ATTORNEY TO BE NOTICED*
                                                                                *Designation: Government Attorney*

                                                                                **Brian D. Morris**

United States Attorneys Office
271 Cadman Plaza East
7th Floor
Brooklyn, NY 11201
718–254–6512
Fax: 718–254–7489
Email: brian.morris2@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Ian Craig Richardson**
U.S. Attorney's Office, Eastern District of
New York
271 Cadman Plaza East
Brooklyn, NY 11201
718–254–6299
Fax: 718–254–6076
Email: ian.richardson@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Michael T. Keilty**
United States Attorney's Office, Eastern
District of Ne
271 Cadman Plaza East
Brooklyn, NY 11201
718–254–7528
Fax: 718–254–6605
Email: michael.keilty@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Winston M. Paes**
Debevoise & Plimpton LLP
919 Third Avenue
New York, NY 10022
212–909–6000
Fax: 212–909–6836
Email: wmpaes@debevoise.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 09/07/2014 | | | Arrest of Robert Bandfield in Southern District of Florida. (Marziliano, August) (Entered: 09/15/2014) |
| 09/08/2014 | 1 | | SEALED INDICTMENT as to Robert Bandfield (1) count(s) 1, 2, 3, Andrew Godfrey (2) count(s) 1, 2, 3, Kelvin Leach (3) count(s) 1, 3, Rohn Knowles (4) count(s) 1, 3, Brian De Wit (5) count(s) 1, 3, Cem Can (6) count(s) 1, 2, 3, IPC Management Services, LLC (7) count(s) 1, 3, IPC Corporate Services INC (8) count(s) 1, 3, IPC Corporate Services LLC (9) count(s) 1, 3, Titan International Securities INC (10) count(s) 1, 3, Legacy Global Markets S.A. (12) count(s) 1, 3, Unicorn International Securities LLC (13) count(s) 1, 3. (Attachments: # 1 Criminal Information Sheet, # 2 Sealing Cover Sheet) (Marziliano, August) (Entered: 09/08/2014) |

| 09/11/2014 | 2 | | Order to Unseal Indictment. Ordered by Magistrate Judge Lois Bloom on 9/9/2014. (Greene, Donna) (Entered: 09/11/2014) |
|---|---|---|---|
| 09/15/2014 | 3 | | Rule 5(c)(3) Documents Received as to Robert Bandfield (Marziliano, August) (Entered: 09/15/2014) |
| 10/06/2014 | 4 | | NOTICE OF ATTORNEY APPEARANCE Winston M. Paes appearing for USA. (Paes, Winston) (Entered: 10/06/2014) |
| 10/10/2014 | 5 | | Minute Entry for proceedings held before Judge I. Leo Glasser on 10/10/2014 as to defendant Robert Bandfield: Case called. Defendant Robert Bandfield present with counsel Michelle A. Gelernt, Esq. AUSA Jacqueline M. Kasulis and AUSA Winston M. Paes present for the Government. Pretrial Services Officer Bianca Carter also present. Initial appearance for the defendant. The defendant is arraigned on the indictment and enters a plea of not guilty. A status conference is scheduled for 10/23/2014 at 10:30 a.m. The period between 10/10/2014 and 10/23/2014 is excluded, for the reasons stated on the record and in the interests of justice, from the calculation of the Speedy Trial Act time limits. The findings required by 18 USC 3161(h)(7)(A) are made on the record. The defendant is continued in custody. (Court Reporter Fred Guerino.) (Kessler, Stanley) (Entered: 10/10/2014) |
| 10/10/2014 | | | ORDER TO CONTINUE – Ends of Justice as to Robert Bandfield. Time excluded from 10/10/2014 until 10/23/2014. Ordered by Judge I. Leo Glasser on 10/10/2014. (Kessler, Stanley) (Entered: 10/10/2014) |
| 10/13/2014 | 6 | | Letter *producing discovery* as to Robert Bandfield (Kasulis, Jacquelyn) (Entered: 10/13/2014) |
| 10/23/2014 | 7 | | MOTION to Continue by Robert Bandfield. (Gelernt, Michelle) (Entered: 10/23/2014) |
| 10/23/2014 | 8 | | ORDER granting 7 Motion to Continue as to Robert Bandfield (1). The status conference is adj'd to 12/4/2014 at 10:00 a.m. The intervening time is excluded from the calculation of the speedy trial time limits. Ordered by Judge I. Leo Glasser on 10/23/2014. (Kessler, Stanley) (Entered: 10/23/2014) |
| 12/04/2014 | 12 | | Minute Entry for proceedings held before Judge I. Leo Glasser on 12/4/2014: Case called. Defendant Robert Bandfield present with counsel Michelle A. Gelernt, Esq. AUSA Jacqueline M. Kasulis and AUSA Winston M. Paes present for the Government. Status conference held. The Court designates this case as a complex case. Another status conference is scheduled for 2/4/2015 at 10:00 a.m. The period between 12/4/2014 and 2/4/2015 is excluded, for the reasons stated on the record and in the interests of justice, from the calculation of the Speedy Trial Act time limits. The findings required by 18 USC 3161(h)(7)(A) are made on the record. Copies of the Judges standard criminal pretrial order are given to counsel. The defendant is continued in custody.(Court Reporter Sherry Bryant.) (Kessler, Stanley) Modified on 12/5/2014 (Kessler, Stanley). (Entered: 12/05/2014) |
| 12/04/2014 | | | ORDER TO CONTINUE – Ends of Justice as to Robert Bandfield. Time excluded from 12/4/2014 until 2/4/2015. Ordered by Judge I. Leo Glasser on 12/4/2014. (Kessler, Stanley) Modified on 1/14/2015 (Kessler, Stanley). (Entered: 12/05/2014) |

| 12/05/2014 | 11 | | Letter *by the government, dated December 4, 2014, providing supplemental Rule 16 discovery (emails, records received from SEC)* as to Robert Bandfield (Paes, Winston) (Entered: 12/05/2014) |
|---|---|---|---|
| 12/11/2014 | 13 | | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Robert Bandfield held on December 4, 2014, before Judge I. Leo Glasser. Court Reporter/Transcriber Sherry Bryant, Telephone number 718–613–2636. Email address: sbryant102@verizon.net. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request – Transcript" located under "Other Filings – Other Documents". Redaction Request due 1/1/2015. Redacted Transcript Deadline set for 1/12/2015. Release of Transcript Restriction set for 3/11/2015. (Bryant, Sherry) (Entered: 12/11/2014) |
| 02/02/2015 | 14 | | MOTION to Continue by Robert Bandfield. (Gelernt, Michelle) (Entered: 02/02/2015) |
| 02/04/2015 | 15 | | ORDER granting 14 Motion to Continue as to Robert Bandfield (1). The status conference is adjourned to 3/4/2015 at 10:00 a.m. The intervening time is excluded from the calculation of the speedy trial time limits for the reasons stated. Ordered by Judge I. Leo Glasser on 2/3/2015. (Kessler, Stanley) (Entered: 02/04/2015) |
| 02/27/2015 | 16 | | NOTICE OF ATTORNEY APPEARANCE: Amy Lynn Walsh appearing for Robert Bandfield (Walsh, Amy) (Entered: 02/27/2015) |
| 03/02/2015 | 17 | | NOTICE OF ATTORNEY APPEARANCE: Savannah Stevenson appearing for Robert Bandfield (Stevenson, Savannah) (Entered: 03/02/2015) |
| 03/02/2015 | 18 | | First MOTION to Continue *Status Conference* by Robert Bandfield. (Stevenson, Savannah) (Entered: 03/02/2015) |
| 03/02/2015 | 19 | | ORDER granting 18 Motion to Continue as to Robert Bandfield (1). The status conference is adj'd from 3/4/2015 to 3/12/2015 at 11 a.m. The intervening time is excluded from the calculation of the speedy trial time limits for the reasons stated. Ordered by Judge I. Leo Glasser on 3/2/2015. (Kessler, Stanley) (Entered: 03/02/2015) |
| 03/04/2015 | 20 | | Letter *producing discovery* as to Robert Bandfield (Kasulis, Jacquelyn) (Entered: 03/04/2015) |
| 03/12/2015 | 21 | | NOTICE OF ATTORNEY APPEARANCE: Eugene E. Ingoglia appearing for Robert Bandfield (Ingoglia, Eugene) (Entered: 03/12/2015) |
| 03/12/2015 | 22 | | Minute Entry for proceedings held before Judge I. Leo Glasser on 3/12/2015: Case called. Defendant Robert Bandfield present with counsel Amy Walsh, Esq. and Eugene E. Ingoglia, Esq. AUSA Jacqueline M. Kasulis and AUSA Winston M. Paes present for the Government. Status conference held. Another status conference is scheduled for 4/16/2015 at 10:00 a.m. The period between 3/12/2015 and 4/16/2015 is excluded, for the reasons stated on the record and in the interests of justice, from the calculation of the Speedy Trial Act time limits. The findings required by 18 USC 3161(h)(7)(A) are made on the record. Copies of the judges standard criminal pretrial order are given to counsel. The |

| | | | |
|---|---|---|---|
| | | | defendant is continued in custody.(Court Reporter Charleane Heading.) (Kessler, Stanley) (Entered: 03/12/2015) |
| 03/12/2015 | | | ORDER TO CONTINUE – Ends of Justice as to Robert Bandfield. Time excluded from 3/12/2015 until 4/16/2015. Ordered by Judge I. Leo Glasser on 3/12/2015. (Kessler, Stanley) (Entered: 03/12/2015) |
| 03/30/2015 | 23 | | Letter *providing additional discovery* as to Robert Bandfield (Kasulis, Jacquelyn) (Entered: 03/30/2015) |
| 03/30/2015 | 24 | | NOTICE OF ATTORNEY APPEARANCE Ian Craig Richardson appearing for USA. (Richardson, Ian) (Entered: 03/30/2015) |
| 04/16/2015 | 25 | | Minute Entry for proceedings held before Judge I. Leo Glasser: Status Conference as to Robert Bandfield held on 4/16/2015. AUSA(s) J. Kasulis/Ian Richardson. Eugene Ingoglia, Esq. ret. for deft. Motion Schedule: Defse. to file motion by 7/15/15; Govt. responses due by 8/17/2015, Reply by defse. due by 8/31/2015. Motion Hearing (Oral argument) set for 9/8/2015 at 10:00 AM in Courtroom 8B South before Judge I. Leo Glasser). Case desig. complex. The period betw. 4/16–9/8/15 is excluded, for the reasons stated on the record and in the interests of justice. Deft. cont'd. in custody. (Court Reporter S. Bryant) (Layne, Monique) (Entered: 04/16/2015) |
| 05/07/2015 | 26 | | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Robert Bandfield held on April 16, 2015, before Judge I. Leo Glasser. Court Reporter/Transcriber Sherry Bryant, Telephone number 718–613–2636. Email address: sbryant102@verizon.net. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request – Transcript" located under "Other Filings – Other Documents". Redaction Request due 5/28/2015. Redacted Transcript Deadline set for 6/8/2015. Release of Transcript Restriction set for 8/5/2015. (Bryant, Sherry) (Entered: 05/07/2015) |
| 05/15/2015 | 27 | | Letter *by the government, dated May 13, 2015, providing supplemental Rule 16 discovery* as to Robert Bandfield (Paes, Winston) (Entered: 05/15/2015) |
| 05/15/2015 | 28 | | Letter *by the government, dated May 15, 2015, providing supplemental Rule 16 discovery* as to Robert Bandfield (Paes, Winston) (Entered: 05/15/2015) |
| 07/08/2015 | 29 | | Letter MOTION for Extension of Time to File *Pre–Trial Motions* by Robert Bandfield. (Ingoglia, Eugene) (Entered: 07/08/2015) |
| 07/09/2015 | 30 | | ORDER granting 29 Motion to modify the briefing schedule for pretrial motions. Oral argument of any motion filed will be heard on 9/29/2015 at 10:00 a.m. The intervening time – until 9/25/2015 – is excluded. For the reasons stated, the findings required by 18 USC Section 3161(h)(7)(A) are made. Ordered by Judge I. Leo Glasser on 7/9/2015. (Kessler, Stanley) (Entered: 07/09/2015) |
| 07/27/2015 | 31 | | NOTICE OF ATTORNEY APPEARANCE Michael T. Keilty appearing for USA. (Keilty, Michael) (Entered: 07/27/2015) |
| 07/31/2015 | 32 | | SUPERSEDING INDICTMENT (S–1) as to Robert Bandfield (1) count(s) 1s–2s, 3s, 4s, 5s, Andrew Godfrey (2) count(s) 1s–2s, 3s, 4s, 5s, Kelvin Leach |

| | | | |
|---|---|---|---|
| | | | (3) count(s) 1s, 3s, Rohn Knowles (4) count(s) 1s, 3s, Brian De Wit (5) count(s) 1s, 3s, 4s, 5s, Cem Can (6) count(s) 1s−2s, 3s, IPC Management Services, LLC (7) count(s) 1s, 3s, 4s, 5s, IPC Corporate Services INC (8) count(s) 1s, 3s, 4s, 5s, IPC Corporate Services LLC (9) count(s) 1s, 3s, 4s, 5s, Titan International Securities INC (10) count(s) 1s, 3s, Legacy Global Markets S.A. (11) count(s) 1s, 3s, 4s, 5s, Unicorn International Securities LLC (12) count(s) 1s, 3s, Gregg Mulholland (13) count(s) 1, 3, 4, 5, Philip Kueber (14) count(s) 1, 3, 4, 5, Paula Psyllakis (15) count(s) 1, 3, 4, 5. (Attachments: # 1 Criminal Information Sheet). (Rec'd. on 8/4/15). (Layne, Monique) (Entered: 08/05/2015) |
| 08/05/2015 | 33 | | MOTION for Extension of Time to File *Motions* by Robert Bandfield. (Ingoglia, Eugene) (Entered: 08/05/2015) |
| 08/10/2015 | 36 | | Minute Entry for proceedings held before Judge I. Leo Glasser on 8/10/2015: Defendants Robert Bandfield and Gregg Mulholland present with counsel. The defendants are arraigned on superseding indictment CR−14−476 (S−1) and enter pleas of not guilty. Another status conference is scheduled for 9/1/2015 at 11:00 a.m. The period between 8/10/2015 and 9/1/2015 is excluded, for the reasons stated on the record and in the interests of justice, from the calculation of the Speedy Trial Act time limits. (Court Reporter Lisa Schwam.) (Kessler, Stanley) (Entered: 08/10/2015) |
| 08/10/2015 | 39 | | Mail receipt, Letter *by the government, dated August 10, 2015, providing supplemental Rule 16 discovery* as to Robert Bandfield (Keilty, Michael) (Entered: 08/10/2015) |
| 08/20/2015 | 42 | | Letter *re discovery for Gregg Mulholland* as to Robert Bandfield, Andrew Godfrey, Kelvin Leach, Rohn Knowles, Brian De Wit, Cem Can, IPC Management Services, LLC, IPC Corporate Services INC, IPC Corporate Services LLC, Titan International Securities INC, Legacy Global Markets S.A., Unicorn International Securities LLC, Gregg Mulholland, Philip Kueber, Paula Psyllakis (Farhadian, Tali) (Entered: 08/20/2015) |
| 08/20/2015 | 43 | | Letter *re discovery* as to Robert Bandfield (Farhadian, Tali) (Entered: 08/20/2015) |
| 08/21/2015 | 45 | | Letter *re Rule 16 Discovery* as to Robert Bandfield (Moore, Nadia) (Entered: 08/21/2015) |
| 09/01/2015 | 49 | | Minute Entry for proceedings held before Judge I. Leo Glasser on 9/1/2015: Defendants Robert Bandfield, Gregg Mulholland and Philip Kueber present with counsel. AUSAs Jacquelyn M. Kasulis, Winston M. Paes and Michael T. Keilty present for the Government. Status conference held. New attorney James Kasouris, Esq. is given 7 days in which to file either a notice of appearance on behalf of defendant Gregg Mulholland or a letter stating that he will not seek to be substituted as counsel. If Mr. Kasouris files a notice of appearance, the Court will entertain Mr. Lanklers application to be relieved at that time. Pretrial motions are to be filed by 11/2/2105. The Governments response is to be filed by 11/23. The period between 9/1/2015 and 11/2/2015 is excluded, for the reasons stated on the record and in the interests of justice, from the calculation of the Speedy Trial Act time limits. The findings required by 18 USC 3161(h)(7)(A) are made on the record. (Court Reporter Mary Agnes Drury.) (Kessler, Stanley) (Entered: 09/01/2015) |

| 09/11/2015 | 53 | | Letter *regarding discovery* as to Robert Bandfield (Keilty, Michael) (Entered: 09/11/2015) |
|---|---|---|---|
| 10/28/2015 | 63 | | Letter *regarding Speedy Trial Act* as to Robert Bandfield, Andrew Godfrey, Kelvin Leach, Rohn Knowles, Brian De Wit, Cem Can, IPC Management Services, LLC, IPC Corporate Services INC, IPC Corporate Services LLC, Titan International Securities INC, Legacy Global Markets S.A., Unicorn International Securities LLC, Gregg Mulholland, Philip Kueber, Paula Psyllakis (Keilty, Michael) (Entered: 10/28/2015) |
| 10/29/2015 | 64 | | ORDER TO CONTINUE – Ends of Justice as to Robert Bandfield, Gregg Mulholland. Time excluded from 11/2/2015 until 12/2/2015. Order endorsed on letter 63 , granting the application to exclude speedy trial time, on consent. Ordered by Judge I. Leo Glasser on 10/29/2015. (Kessler, Stanley) (Entered: 10/29/2015) |
| 11/04/2015 | 65 | | Letter *regarding discovery* as to Robert Bandfield (Keilty, Michael) (Entered: 11/04/2015) |
| 12/02/2015 | 70 | | ORDER granting 69 Motion for Extension of Time to File pretrial motions as to Gregg Mulholland (13) to 12/7/2015. Ordered by Judge I. Leo Glasser on 12/2/2015. (Kessler, Stanley) (Entered: 12/02/2015) |
| 12/02/2015 | 72 | | MOTION to Suppress *and for Other Relief* by Robert Bandfield. (Attachments: # 1 Notice of Motion Notice of Pretrial Motions, # 2 Declaration of Eugene Ingoglia, # 3 Exhibit A, # 4 Exhibit B, # 5 Exhibit C, # 6 Exhibit D, # 7 Exhibit E, # 8 Exhibit F) (Ingoglia, Eugene) (Entered: 12/02/2015) |
| 12/04/2015 | 74 | | Letter *regarding discovery* as to Robert Bandfield (Keilty, Michael) (Entered: 12/04/2015) |
| 12/07/2015 | 77 | | SCHEDULING ORDER as to Robert Bandfield re 72 MOTION to Suppress and for Other Relief filed by Robert Bandfield. Responses due by 1/4/2016. Motion Hearing set for 1/22/2016 at 10:00 AM. Ordered by Judge I. Leo Glasser on 12/7/2015. (Kessler, Stanley) (Entered: 12/07/2015) |
| 12/31/2015 | 82 | | Letter *regarding discovery* as to Robert Bandfield (Keilty, Michael) (Entered: 12/31/2015) |
| 01/04/2016 | 84 | | MEMORANDUM in Opposition re 72 MOTION to Suppress *and for Other Relief*, 78 MOTION for Bill of Particulars MOTION for Release of Brady Materials MOTION in Limine MOTION for Discovery MOTION to Suppress (Paes, Winston) (Entered: 01/04/2016) |
| 01/11/2016 | 85 | | Letter *re Discovery* as to Robert Bandfield (Moore, Nadia) (Entered: 01/11/2016) |
| 01/21/2016 | 86 | | AFFIDAVIT/AFFIRMATION by Robert Bandfield 72 MOTION to Suppress *and for Other Relief* filed by Robert Bandfield (Attachments: # 1 Exhibit H to Bandfield Pretrial Motions) (Ingoglia, Eugene) (Entered: 01/21/2016) |
| 01/21/2016 | 88 | | Letter *regarding discovery* as to Robert Bandfield (Keilty, Michael) (Entered: 01/21/2016) |
| 01/21/2016 | 89 | | Letter *by the government, dated January 21, 2016, providing information to assist in review of discovery* as to Robert Bandfield, Gregg Mulholland (Paes, |

| | | | |
|---|---|---|---|
| | | | Winston) (Entered: 01/21/2016) |
| 01/22/2016 | 90 | | Minute Entry for proceedings held before Judge I. Leo Glasser on 1/22/2016: Defendants Robert Bandfield and Gregg Mulholland present with counsel. The pretrial motions of the defendants are argued. The motions for 1) a Bill of Particulars; 2) an order directing the government to provide Brady, Jenks, Giglio and Rule 404(b) materials on a specified schedule; and 3) severance of the defendants for trial, are denied for the reasons stated on the record. The motions for leave to file in limine motions are granted. The Rule 16 motion, the wiretap motion and the motion to strike surplusage are taken on submission. A hearing on the motions to suppress evidence is scheduled for 3/29/2016 at 10:00 a.m. The period between 1/22/2106 and 3/29/2016 is excluded, for the reasons stated on the record and in the interests of justice, from the calculation of the Speedy Trial Act time limits. The findings required by 18 USC 3161(h)(7)(A) are made on the record. (Court Reporter Angela Grant.) (Kessler, Stanley) (Entered: 01/22/2016) |
| 01/31/2016 | 91 | | Letter *by the government, dated January 31, 2016, providing list of relevant stock tickers and bank records* as to Robert Bandfield, Gregg Mulholland (Paes, Winston) (Entered: 01/31/2016) |
| 02/03/2016 | 93 | | Letter *regarding discovery* as to Robert Bandfield (Keilty, Michael) (Entered: 02/03/2016) |
| 02/26/2016 | 96 | | SUPERSEDING INDICTMENT(S−2) as to Robert Bandfield (1) count(s) 1ss, 2ss, 3ss, 4ss, 5ss, Andrew Godfrey (2) count(s) 1ss, 2ss, 3ss, 4ss, 5ss, Kelvin Leach (3) count(s) 1ss, 3ss, Rohn Knowles (4) count(s) 1ss, 3ss, Brian De Wit (5) count(s) 1ss, 3ss, 4ss, 5ss, Cem Can (6) count(s) 1ss, 2ss, 3ss, IPC Management Services, LLC (7) count(s) 1ss, 3ss, 4ss, 5ss, IPC Corporate Services INC (8) count(s) 1ss, 3ss, 4ss, 5ss, IPC Corporate Services LLC (9) count(s) 1ss, 3ss, 4ss, 5ss, Titan International Securities INC (10) count(s) 1ss, 3ss, Legacy Global Markets S.A. (11) count(s) 1ss, 3ss, 4ss, 5ss, Unicorn International Securities LLC (12) count(s) 1ss, 3ss, Gregg Mulholland (13) count(s) 1s, 3s, 4s, 5s, Paula Psyllakis (15) count(s) 1s, 3s, 4s, 5s. (Attachments: # 1 Criminal Information Sheet) (Layne, Monique) (Entered: 02/29/2016) |
| 03/08/2016 | 97 | | First MOTION for Hearing *Adjournment* by Robert Bandfield. (Ingoglia, Eugene) (Entered: 03/08/2016) |
| 03/09/2016 | 98 | | ORDER, granting deft's 97 Motion for adjournment of the motion hearing as to Robert Bandfield (1). Adjourned to 4/14/16 at 10:00 a.m. The intervening time is excluded for the reasons stated. The findings required by 18 USC SEC. 3161 (h)(7)(A) are hereby made. Ordered by Judge I. Leo Glasser on 3/8/2016. (Layne, Monique) (Entered: 03/09/2016) |
| 03/09/2016 | | | Set/Reset Deadlines re Motion in case as to Robert Bandfield re 97 MOTION. Motion Hearing set for 4/14/2016 at 10:00 AM in Courtroom 8B South before Judge I. Leo Glasser. (Layne, Monique) (Entered: 03/09/2016) |
| 03/15/2016 | 99 | | Letter *requesting a brief adjournment of the April 14, 2106 hearing* as to Robert Bandfield (Kasulis, Jacquelyn) (Entered: 03/15/2016) |
| 03/17/2016 | 100 | | ORDER as to Robert Bandfield, Gregg Mulholland re 99 letter. Order endorsed on letter 99 , granting the application to adjourn the motion to suppress to |

| | | | |
|---|---|---|---|
| | | | 4/21/2016 at 10:30 AM. The period from 4/14 to 4/21/2016 is excluded from the calculation of the speedy trial time limits. Ordered by Judge I. Leo Glasser on 3/17/2016. (Kessler, Stanley) (Entered: 03/17/2016) |
| 03/17/2016 | | | ORDER TO CONTINUE – Ends of Justice as to Robert Bandfield, Gregg Mulholland. Time excluded from 4/14/2016 until 4/21/2016. Ordered by Judge I. Leo Glasser on 3/17/2016. (Kessler, Stanley) (Entered: 03/17/2016) |
| 03/17/2016 | 101 | | MOTION to Continue *Arraignment until April 21, 2016 in connection with Hearing* by Robert Bandfield as to Robert Bandfield, Andrew Godfrey, Kelvin Leach, Rohn Knowles, Brian De Wit, Cem Can, IPC Management Services, LLC, IPC Corporate Services INC, IPC Corporate Services LLC, Titan International Securities INC, Legacy Global Markets S.A., Unicorn International Securities LLC, Gregg Mulholland, Philip Kueber, Paula Psyllakis. (Ingoglia, Eugene) (Entered: 03/17/2016) |
| 03/17/2016 | 102 | | ORDER granting 101 the application of defts. Robert Bandfield and Gregg Mulholland to adjourn their arraignment on the superseding indictment from 3/22/2016 until 4/21/2016, at the time of the hearing on the motion to suppress. Ordered by Judge I. Leo Glasser on 3/17/2016. (Kessler, Stanley) (Entered: 03/17/2016) |
| 04/21/2016 | 104 | | Minute Entry for proceedings held before Judge I. Leo Glasser on 4/21/2016: Defendant Robert Bandfield present with counsel Eugene E. Ingoglia, Esq. and Savannah Stevenson, Esq. Defendant Gregg Mulholland present with counsel James Kasouras, Esq. AUSAs Jacquelyn M. Kasulis, Winston M. Paes and Michael T. Keilty present for the Government. The defendants are arraigned on superseding indictment CR–14–00476(S–2) and enter pleas of not guilty. Suppression hearing ordered and begun. The hearing is continued to 5/4/2016 at 10:30 a.m. Defense counsel will notify the Court if they determine that the continuation is not necessary. Jury selection and trial of this case are scheduled for 5/31/2016 at 10:00 a.m. A final pretrial conference is scheduled for 5/23/2016 at 12:00 Noon.(Court Reporter Gene Rudolph.) (Kessler, Stanley) (Entered: 04/21/2016) |
| 04/22/2016 | 105 | | CRIMINAL PRETRIAL ORDER setting a final pretrial conference for 5/23/2016 at 12:00 Noon and jury selection and trial for 5/31/2016 at 10:00 a.m. Ordered by Judge I. Leo Glasser on 4/21/2016. (Kessler, Stanley) (Entered: 04/22/2016) |
| 04/26/2016 | 106 | | Letter *regarding discovery* as to Robert Bandfield (Keilty, Michael) (Entered: 04/26/2016) |
| 05/02/2016 | 108 | | MOTION for Hearing *Cancellation* by Robert Bandfield. (Ingoglia, Eugene) (Entered: 05/02/2016) |
| 05/05/2016 | 110 | | Letter *regarding discovery* as to Robert Bandfield (Keilty, Michael) (Entered: 05/05/2016) |
| 05/06/2016 | 112 | | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Robert Bandfield, Gregg Mulholland held on 4/21/16, before Judge Glasser. Court Reporter/Transcriber Rudolph. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction |

| | | | |
|---|---|---|---|
| | | | Request – Transcript" located under "Other Filings – Other Documents". Redaction Request due 5/27/2016. Redacted Transcript Deadline set for 6/6/2016. Release of Transcript Restriction set for 8/4/2016. (Rudolph, Gene) (Entered: 05/06/2016) |
| 05/10/2016 | 115 | | Letter MOTION to Suppress *Following Hearing* by Robert Bandfield. (Attachments: # 1 Exhibit DX7, # 2 Exhibit DX11, # 3 Exhibit DX16, # 4 Exhibit DX16, # 5 Exhibit DX20, # 6 Exhibit DX23, # 7 Exhibit DX24, # 8 Exhibit DX39, # 9 Exhibit DX41, # 10 Exhibit DX42, # 11 Exhibit DX43, # 12 Exhibit DX45, # 13 Exhibit DX46, # 14 Exhibit DX48, # 15 Exhibit DX49) (Ingoglia, Eugene) (Entered: 05/10/2016) |
| 05/12/2016 | 116 | | Letter *regarding discovery* as to Robert Bandfield (Keilty, Michael) (Entered: 05/12/2016) |
| 05/17/2016 | 117 | | Letter *by the government, dated May 17, 2016, providing 3500 materials and exhibits for trial* as to Robert Bandfield (Paes, Winston) (Entered: 05/17/2016) |
| 05/17/2016 | 118 | | RESPONSE in Opposition re 115 Letter MOTION to Suppress *Following Hearing regarding the Belize Searches* (Kasulis, Jacquelyn) (Entered: 05/17/2016) |
| 05/24/2016 | 119 | | Minute Entry for proceedings held before Judge I. Leo Glasser on 5/23/2016: Defendant Robert Bandfield present with counsel Eugene E. Ingoglia, Esq. and Savannah Stevenson, Esq. AUSAs Jacquelyn M. Kasulis, Winston M. Paes and Michael T. Keilty present for the Government. The defendant is sworn. After being advised of his rights by the Court, the defendant withdraws his plea of not guilty and enters a plea of guilty to count (3) of superseding indictment CR−14−476(S−2). The Court finds that the plea is made knowingly and voluntarily and that there is a factual basis for the plea, and accepts the plea. Sentencing is scheduled for 9/1/2016 at 11:00 a.m. A preliminary order of forfeiture is submitted and signed. (Court Reporter Annette Montalvo.) (Kessler, Stanley) (Entered: 05/24/2016) |
| 05/24/2016 | 120 | | ORDER DIRECTING FORFEITURE OF PROPERTY as to Robert Bandfield. Ordered by Judge I. Leo Glasser on 5/23/2016. Five certified copies transmitted to FSA Law Clerk Alexander Teichman. (Kessler, Stanley) (Entered: 05/24/2016) |
| 07/06/2016 | 124 | | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Robert Bandfield held on 1/22/16, before Judge Glasser. Court Reporter/Transcriber Angela Grant, Telephone number 718−613−2605. Email address: Angela.grant207@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request – Transcript" located under "Other Filings – Other Documents". Redaction Request due 7/27/2016. Redacted Transcript Deadline set for 8/8/2016. Release of Transcript Restriction set for 10/4/2016. (Grant, Angela) (Entered: 07/06/2016) |
| 07/08/2016 | 125 | | MOTION for Leave to Appear Pro Hac Vice by Karla and Kathy Melgaard as to Robert Bandfield, Andrew Godfrey, Kelvin Leach, Rohn Knowles, Brian De Wit, Cem Can, IPC Management Services, LLC, IPC Corporate Services INC, IPC Corporate Services LLC, Titan International Securities INC, Legacy |

| | | | |
|---|---|---|---|
| | | | Global Markets S.A., Unicorn International Securities LLC, Gregg Mulholland, Philip Kueber, Paula Psyllakis. (Lee, Tiffeny) (Entered: 07/08/2016) |
| 07/08/2016 | 126 | | ORDER granting 125 Motion for Leave to Appear Pro Hac Vice to Brian D. Myers, Esq., on behalf of Petitioners Karla and Kathy Melgaard. Also, the attorney shall ensure that the $150 admission fee be submitted to the Clerks Office. So Ordered by Judge I. Leo Glasser on 7/8/2016. (Lee, Tiffeny) (Entered: 07/08/2016) |
| 07/11/2016 | 127 | | NOTICE as 125 MOTION for Leave to Appear Pro Hac Vice by Karla and Kathy Melgaard. Filing Fee Received: Receipt #4653103821; $150. (Lee, Tiffeny) (Entered: 07/11/2016) |
| 07/12/2016 | 128 | | Third Party MOTION for Forfeiture of Property *Verified Third Party Petition to Adjudicate Interest In Forfeited Property And To Amend Order Of Forfeiture by Karla and Kathy Melgaard, as to* by Robert Bandfield. (Attachments: # 1 Exhibit) (Layne, Monique). Modified on 8/30/2016 to correct filing error. Filer incorrectly spread the previous entry as to all defts., this event was only as to deft. Robert Bandfield. (Layne, Monique). (Entered: 08/30/2016) |
| 07/14/2016 | 129 | | SCHEDULING ORDER re 128 Verified Third Party Petition to Adjudicate Interest in Forfeited Property and to Amend Order of Forfeiture filed by Karla and Kathy Melgaard. Ordered by Judge I. Leo Glasser on 7/14/2016. (Landsman–Roos, Lily) (Entered: 07/14/2016) |
| 07/15/2016 | 130 | | NOTICE OF ATTORNEY APPEARANCE Brian D. Morris appearing for USA. *(attorney to be noticed)* (Morris, Brian) (Entered: 07/15/2016) |
| 08/05/2016 | 134 | | MOTION for Extension of Time to File Response/Reply as to 128 Third Party MOTION for Forfeiture of Property *Verified Third Party Petition to Adjudicate Interest in Forfeited Property and to Amend Order of Forfeiture* by USA as to Robert Bandfield. (Morris, Brian) (Entered: 08/05/2016) |
| 08/09/2016 | 135 | | ORDER granting 134 Motion for Extension of Time to File Response to the verified third–party petition as to Robert Bandfield (1). Ordered by Judge I. Leo Glasser on 8/8/2016. (Kessler, Stanley) (Entered: 08/09/2016) |
| 08/11/2016 | 137 | | ORDER as to Robert Bandfield. The Probation Department's request to postpone the sentencing presently scheduled for 9/1/2016 is granted. Sentencing is adj'd to 9/29/2016 at 11:00 AM. Ordered by Judge I. Leo Glasser on 8/11/2016. (Kessler, Stanley) (Entered: 08/11/2016) |
| 09/01/2016 | | | NOTICE OF HEARING ON MOTION: The hearing on the third party petition to adjudicate interest in forfeited property 128 , previously scheduled for 9/9/2016, is adjourned to 9/29/2016 at 11:00 A.M. (Kessler, Stanley) (Entered: 09/01/2016) |
| 09/20/2016 | 145 | | MOTION for Extension of Time to File Response/Reply as to 128 Third Party MOTION for Forfeiture of Property *Verified Third Party Petition to Adjudicate Interest In Forfeited Property And To Amend Order Of Forfeiture by Karla and Kathy Melgaard, as to and with the Consent of Claimants* by USA as to Robert Bandfield. (Morris, Brian) (Entered: 09/20/2016) |
| 09/21/2016 | 146 | | |

| | | | |
|---|---|---|---|
| | | | ORDER endorsed on letter from Brian D. Morris, AUSA to the Court 145 , granting the application for an extension of time to 11/25/2016 to respond to the 3rd party petition to adjudicate interest in forfeited property pertaining to deft. Robert Bandfield. Ordered by Judge I. Leo Glasser on 9/21/2016. (Kessler, Stanley) (Entered: 09/21/2016) |
| 09/22/2016 | 147 | | MOTION to Continue Sentencing *until November 29, 2016* by Robert Bandfield. (Ingoglia, Eugene) (Entered: 09/22/2016) |
| 09/27/2016 | 149 | | ORDER granting 147 Motion to Continue Sentencing as to Robert Bandfield (1). Sentencing is adj'd to 11/29/2016 at 11:00 AM. Ordered by Judge I. Leo Glasser on 9/27/2016. (Kessler, Stanley) (Entered: 09/27/2016) |
| 09/27/2016 | | | NOTICE OF HEARING ON MOTION: The hearing on the third party petition to adjudicate interest in forfeited property 128 as to defendant Robert Bandfield, previously scheduled for 9/29/2016, is adjourned to 11/29/2016 at 11:00 A.M. (Kessler, Stanley) (Entered: 09/27/2016) |
| 11/10/2016 | 156 | | MOTION to Continue Sentencing by Robert Bandfield. (Ingoglia, Eugene) (Entered: 11/10/2016) |
| 11/14/2016 | 157 | | ORDER granting 156 Motion to Continue Sentencing as to Robert Bandfield (1). Sentencing is adj'd to 12/21/2016 at 11:00 AM in Courtroom 8B South before Judge I. Leo Glasser. Ordered by Judge I. Leo Glasser on 11/14/2016. (Kessler, Stanley) (Entered: 11/14/2016) |
| 11/16/2016 | 158 | | MOTION for Extension of Time to File Response/Reply *Verified Third Party Petition to Adjudicate Interest In Forfeited Property And To Amend Order Of Forfeiture by Karla and Kathy Melgaard, as to and with the Consent of Claimants* by USA as to Robert Bandfield. (Morris, Brian) (Entered: 11/16/2016) |
| 11/21/2016 | 159 | | Amended MOTION for Extension of Time to File Response/Reply *to Verified Third Party Petition to Adjudicate Interest In Forfeited Property And To Amend Order Of Forfeiture by Karla and Kathy Melgaard, as to and with the Consent of Claimants* by USA as to Robert Bandfield. (Morris, Brian) (Entered: 11/21/2016) |
| 11/21/2016 | 160 | | ORDER granting 158 and 159 – Gov't's motion for extension of time to file response to the third–party petition to adjudicate interest in forfeited property. The gov't's time to respond is extended to 1/24/2017. The status conference on the petition is adj'd from 12/21/2016 to 2/16/2017 at 11:00 a.m. Ordered by Judge I. Leo Glasser on 11/21/2016. (Kessler, Stanley) (Entered: 11/21/2016) |
| 12/13/2016 | 163 | | Letter *requesting adjournment* as to Robert Bandfield (Keilty, Michael) (Entered: 12/13/2016) |
| 12/14/2016 | 165 | | ORDER endorsed on letter 163 , granting the application to postpone the sentencing of Robert Bandfield to 1/6/2017 at 12:00 Noon. Ordered by Judge I. Leo Glasser on 12/14/2016. (Kessler, Stanley) (Entered: 12/14/2016) |
| 12/29/2016 | 167 | | Letter *requesting brief sentencing adjournments* as to Robert Bandfield, Gregg Mulholland (Kasulis, Jacquelyn) (Entered: 12/29/2016) |
| 01/03/2017 | 168 | | ORDER endorsed on letter 167 , granting the application to adjourn the sentencing of Gregg Mulholland to 1/19/2017 at 12:00 Noon and of Robert |

| | | | |
|---|---|---|---|
| | | | Bandfield to 1/25/2017 at 11:00 a.m. Ordered by Judge I. Leo Glasser on 12/30/2016. (Kessler, Stanley) (Entered: 01/03/2017) |
| 01/13/2017 | 170 | | SENTENCING MEMORANDUM by Robert Bandfield (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17, # 18 Exhibit 18, # 19 Exhibit 19, # 20 Exhibit 20, # 21 Exhibit 21, # 22 Exhibit 22, # 23 Exhibit 23, # 24 Exhibit 24, # 25 Exhibit 25, # 26 Exhibit 26, # 27 Exhibit 27, # 28 Exhibit 28, # 29 Exhibit 29, # 30 Exhibit 30) (Stevenson, Savannah) (Entered: 01/13/2017) |
| 01/17/2017 | 173 | | MOTION to Continue Sentencing *until January 31, 2017* by Robert Bandfield. (Ingoglia, Eugene) (Entered: 01/17/2017) |
| 01/18/2017 | 175 | | ORDER granting 173 Motion to Continue Sentencing as to Robert Bandfield (1). Sentencing is adj'd to 1/31/2017 at 11:30 AM. Ordered by Judge I. Leo Glasser on 1/18/2017. (Kessler, Stanley) (Entered: 01/18/2017) |
| 01/18/2017 | 176 | | MOTION for Extension of Time to File *Settlement Documentation Regarding Verified Third Party Petition to Adjudicate Interest In Forfeited Property And To Amend Order Of Forfeiture By Karla and Kathy Melgaard and To Adjourn February 16, 2017 Status Conference, Joined By The Claimants* by USA as to Robert Bandfield. (Morris, Brian) (Entered: 01/18/2017) |
| 01/19/2017 | 177 | | ORDER granting 176 Motion for Extension of Time to File as to Robert Bandfield (1). The time to file settlement documentation or a further status report as to the third–party petition to amend the order of forfeiture is extended to 3/24/2017, and the status conference currently scheduled for 2/16/2017 is adjourned sine die. Ordered by Judge I. Leo Glasser on 1/19/2017. (Kessler, Stanley) (Entered: 01/19/2017) |
| 01/26/2017 | 184 | | MOTION to Continue Sentencing *until February 6, 2017 at 2:30pm* by Robert Bandfield. (Ingoglia, Eugene) (Entered: 01/26/2017) |
| 01/27/2017 | 185 | | ORDER granting 184 Motion to Continue Sentencing as to Robert Bandfield (1). Sentencing is adj'd to 2/6/2017 at 2:30 PM. Ordered by Judge I. Leo Glasser on 1/27/2017. (Kessler, Stanley) (Entered: 01/27/2017) |
| 01/31/2017 | 186 | | Letter *by the government, dated January 31, 2017, providing restitution information* as to Robert Bandfield, Andrew Godfrey, Kelvin Leach, Rohn Knowles, Brian De Wit, Cem Can, IPC Management Services, LLC, IPC Corporate Services INC, IPC Corporate Services LLC, Titan International Securities INC, Legacy Global Markets S.A., Unicorn International Securities LLC, Gregg Mulholland, Philip Kueber, Paula Psyllakis (Paes, Winston) (Entered: 01/31/2017) |
| 02/02/2017 | 187 | | SENTENCING MEMORANDUM SUPPLEMENT by Robert Bandfield (Ingoglia, Eugene) (Entered: 02/02/2017) |
| 02/02/2017 | 188 | | SENTENCING MEMORANDUM by USA as to Robert Bandfield (Paes, Winston) (Entered: 02/02/2017) |
| 02/02/2017 | 190 | | Minute Entry for proceedings held before Judge I. Leo Glasser on 2/2/2017: Eugene E. Ingoglia, Esq., counsel for Robert Bandfield; James Kousouros, Esq., counsel for Gregg Mulholland; AUSA Jacquelyn Kasulis and AUSA |

| | | | |
|---|---|---|---|
| | | | Winston Paes, counsel for the Government, all present via telephone. Defendants not present. Conference held concerning sentencing matters. The case will proceed to sentencing as scheduled, on 2/6/2017. The issues of restitution will be addressed at a later date.(Court Reporter Anthony Mancuso.) (Kessler, Stanley) (Entered: 02/02/2017) |
| 02/03/2017 | 191 | | SENTENCING MEMORANDUM SUPPLEMENT by Robert Bandfield (Ingoglia, Eugene) (Entered: 02/03/2017) |
| 02/06/2017 | 196 | | Minute Entry for proceedings held before Judge I. Leo Glasser: Sentencing held on 2/6/2017 for Robert Bandfield (1). AUSA(s) Jaccfuelyn M. Kasulis/Winston M. Paes. Savannah Stevenson, Esq. ret. for deft. Count(s) 1, 1s−2s, 2, 2ss, 3, 3s, 4s, 4ss, 5s, 5ss, Dismissed. Count(s) 3ss, Deft. sentenced to 72 months IMPRISONMENT, followed by 3 years of SUPERVISED RELEASE w/SPECIAL CONDITIONS. Deft. assessed the sum of $100.00. REC. TO BOP: 1. Deft. designated to the FCI at Sheridan, Oregon, in order to facilitate family visits. 2. Deft be permitted to participate in a residential alcohol treatment program (RDAP). 3. That deft. be provided with an appropriate hearing aid. W/A'DDL. FORFEITED PROPERTY TERMS. (Court Reporter: Anthony Frisolone). (Layne, Monique) (Entered: 02/10/2017) |
| 02/10/2017 | 197 | | JUDGMENT as to Robert Bandfield (1), Count(s) 1, 1s−2s, 2, 2ss, 3, 3s, 4s, 4ss, 5s, 5ss, Dismissed. Count(s) 3ss, Deft. sentenced to 72 months IMPRISONMENT, followed by 3 years of SUPERVISED RELEASE w/SPECIAL CONDITIONS. Deft. assessed the sum of $100.00. REC. TO BOP: 1. Deft. designated to the FCI at Sheridan, Oregon, in order to facilitate family visits. 2. Deft be permitted to participate in a residential alcohol treatment program (RDAP). 3. That deft. be provided with an appropriate hearing aid. W/ADD'L. FORFEITED PROPERTY TERMS. Ordered by Judge I. Leo Glasser on 2/8/2017. (Layne, Monique) (Entered: 02/10/2017) |
| 02/23/2017 | 201 | | Letter dtd. 2/23/17 from Eugene Ingoglia o/b/o Robert Bandfield to Judge Glasser, "advising he no longer represents Mr. Bandfield in the above case." (Layne, Monique) (Entered: 02/23/2017) |
| 02/23/2017 | | | Attorney update in case as to Robert Bandfield. Attorney Eugene E. Ingoglia terminated per 201 . (Layne, Monique) (Entered: 02/23/2017) |
| 03/23/2017 | 205 | | MOTION for Forfeiture of Property *Letter in Compliance with Court's January 19, 2017 Order Requesting Entry of Proposed Final Order of Forfeiture* by USA as to Robert Bandfield. (Attachments: # 1 Proposed Order of Forfeiture) (Morris, Brian) (Entered: 03/23/2017) |
| 03/24/2017 | 206 | | ORDER granting 205 Motion for Forfeiture of Property as to Robert Bandfield (1). Ordered by Judge I. Leo Glasser on 3/24/2017. Four certified copies of the order were forwarded to FSA Paralegal Nicole Brown. (Kessler, Stanley) (Entered: 03/24/2017) |
| 08/17/2017 | 212 | | ORDER Modifying Conditions or Term of Supervision as to Robert Bandfield. Ordered by Judge I. Leo Glasser on 8/16/2017. (Kessler, Stanley) (Entered: 08/17/2017) |
| 02/04/2019 | 224 | | TRANSFER OF JURISDICTION REQUEST as to Robert Bandfield To The District of Oregon. Awaiting acceptance and signature. (Attachments: # 1 TOJ Memo) (Wilder, Monia) (Entered: 02/04/2019) |

| 02/05/2019 | 225 | | Notice to District of Oregon of a Transfer of Jurisdiction as to Robert Bandfield. Your case number is: 1:14–cr–00476. If you require a copy of the financial ledger, please email your request to [Frank_Daley@nyed.uscourts.gov]. (If you require certified copies of any documents, please send a request to [InterDistrictTransfer_NYED@nyed.uscourts.gov]. If you wish to designate a different email address for future transfers, send your request to InterDistrictTransfer_TXND@txnd.uscourts.gov.) (Layne, Monique) (Entered: 02/05/2019) |
|---|---|---|---|
| 02/05/2019 | 226 | | ORDER TRANSFERRING JURISDICTION as to Leroy Brooks From the ED–NY To District of Oregon. ORDERED that the jurisdiction of the supervised releasee named above be transferred with the records of this Court to the U.S. District Court for the District of Oregon upon that Court's order of acceptance of jurisdiction. Ordered by Judge I. Leo Glasser on 2/4/2019. Ordered by Judge I. Leo Glasser on 2/4/2019. (Layne, Monique) (Entered: 02/05/2019) |
| 02/13/2019 | 227 | | Probation/Supervised Releasee Jurisdiction Transferred to Oregon as to Robert Bandfield Transmitted Transfer of Jurisdiction form, with certified copies of indictment, judgment and docket sheet. (Marziliano, August) (Entered: 02/13/2019) |

WMP:JMK/MTK/BDM
F. #2013R00505

FILED
CLERK

2016 FEB 26 PM 3: 50

U.S. DISTRICT COURT
EASTERN DISTRICT
OF NEW YORK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

   - against -

ROBERT BANDFIELD,
      also known as "Bob Bandfield,"
GREGG MULHOLLAND,
      also known as "Stamps" and "Charlie Wolf,"
BRIAN DE WIT,
PAULA PSYLLAKIS,
KELVIN LEACH,
ROHN KNOWLES,
CEM CAN,
      also known as "Jim Can,"
ANDREW GODFREY,
IPC MANAGEMENT SERVICES, LLC,
IPC CORPORATE SERVICES INC.,
IPC CORPORATE SERVICES LLC,
LEGACY GLOBAL MARKETS S.A.,
TITAN INTERNATIONAL SECURITIES INC. and
UNICORN INTERNATIONAL SECURITIES LLC,

               Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

S U P E R S E D I N G
I N D I C T M E N T

Cr. No. 14-476 (S-2) (ILG)
(T. 15, U.S.C., §§ 78j(b) and 78ff;
T. 18, U.S.C., §§ 371, 981(a)(1)(C),
982(a)(1), 1956(h), 2 and 3551 et
seq.; T. 21, U.S.C., § 853(p); T. 28,
U.S.C., § 2461(c))

THE GRAND JURY CHARGES:

## INTRODUCTION

      At all times relevant to this Superseding Indictment, unless otherwise indicated:

I.    Background

    A.    The Corporate Defendants

       1.    The defendant IPC MANAGEMENT SERVICES, LLC was a Nevada

limited liability company with its principal place of business in Belize City, Belize, and a

mailing address in Clackamas, Oregon. The defendant IPC CORPORATE SERVICES INC. was

a Belize corporation with its principal place of business in Belize City, Belize, and an office in St. Vincent, West Indies. The defendant IPC CORPORATE SERVICES LLC was a Nevis, West Indies, limited liability company with its principal place of business in Belize City, Belize, and mailing addresses in Clackamas, Oregon, and Nevis, West Indies. IPC MANAGEMENT SERVICES, LLC, IPC CORPORATE SERVICES INC. and IPC CORPORATE SERVICES LLC (collectively, "IPC CORP") were offshore management companies that marketed themselves on their website as providing, inter alia, the following services: (a) offshore company formation; (b) nominee services; (c) trust formation; (d) licensed trustee services; (e) full banking services; (f) offshore credit cards; and (g) offshore brokerage (securities) accounts.

2. The defendant LEGACY GLOBAL MARKETS S.A. ("LEGACY") was an offshore broker-dealer and investment management company with its principal place of business in Panama City, Panama, and an office in Belize City, Belize. LEGACY marketed itself on its website as a fully licensed broker-dealer, regulated by the International Financial Services Commission ("IFSC") of Belize, which provided investors with full access to the major global exchanges worldwide from a single investment account. LEGACY emphasized that its management consisted of seasoned executives who had extensive experience in the offshore financial industry and distinguished backgrounds ranging from top-performing financial advisors to experts in banking, public policy, securities law and regulatory compliance.

3. The defendant TITAN INTERNATIONAL SECURITIES INC. ("TITAN") was an offshore broker-dealer and investment management company with its principal place of business in Belize City, Belize. TITAN marketed itself on its website as a fully licensed broker-dealer, regulated by the IFSC of Belize, which serviced, inter alia, the Over-the-Counter ("OTC") markets for both corporate and individual clients. TITAN

2

emphasized that it considered client confidentiality paramount and adhered to Belize's strict privacy laws.

4.      The defendant UNICORN INTERNATIONAL SECURITIES LLC ("UNICORN") was an offshore broker-dealer and investment management company with its principal place of business in Belize City, Belize. UNICORN marketed itself on its website as a fully licensed broker-dealer, regulated by the IFSC of Belize, which provided investors with full access to the major global exchanges worldwide from a single investment account. UNICORN emphasized that its clients could "trade with confidence" because, inter alia: (a) information about beneficial owners, shareholders, directors and officers is not filed with the Belize government and not available to the public; (b) Belize does not disclose banking and financial information to the United States, or any other foreign government, for any reason, including for cases involving tax-related issues; (c) no government approvals are required for the transfer of dividends, interest and royalties, and for the repatriation of capital; and (d) it provided online brokerage features, including order routing to different market makers and 24-hour access to cash and securities transactions.

B.     <u>The Individual Defendants</u>

5.      The defendant ROBERT BANDFIELD, also known as "Bob Bandfield," a U.S. citizen, founded and controlled IPC CORP. BANDFIELD worked at IPC CORP's office in Belize City, Belize. BANDFIELD also claimed to have created TITAN, LEGACY and UNICORN.

6.      The defendant GREGG MULHOLLAND, also known as "Stamps" and "Charlie Wolf," a dual citizen of the U.S. and Canada and resident of California, was one of IPC CORP's largest clients. By June 2011, MULHOLLAND had moved cash and a substantial

3

amount of his securities to LEGACY, and in or about February 2012, MULHOLLAND purchased LEGACY for approximately $1 million. From approximately February 2012 through September 2014, MULHOLLAND secretly owned and controlled LEGACY.

7.      The defendant BRIAN DE WIT, a citizen of Canada, was LEGACY's President and primary broker. DE WIT worked at LEGACY's offices in Belize and Panama.

8.      The defendant PAULA PSYLLAKIS, a citizen of Canada, was married to the defendant BRIAN DE WIT and managed LEGACY's back office operations. PSYLLAKIS worked at LEGACY's offices in Belize and Panama.

9.      The defendant KELVIN LEACH, a citizen of the Bahamas, was TITAN's President. LEACH worked at TITAN's office in Belize City, Belize.

10.     The defendant ROHN KNOWLES, a citizen of the Bahamas, was TITAN's Head Securities Trader. KNOWLES worked at TITAN's office in Belize City, Belize.

11.     The defendant CEM CAN, also known as "Jim Can," a dual citizen of Canada and Turkey, was UNICORN's President. CAN worked at UNICORN's office in Belize City, Belize.

12.     The defendant ANDREW GODFREY, a citizen of Belize, was BANDFIELD's primary associate and worked at IPC CORP's office in Belize City, Belize. GODFREY was the main contact at IPC CORP for its clients.

II.     Relevant Regulatory Principles and Definitions

13.     The Foreign Account Tax Compliance Act ("FATCA") was a federal law enacted in March 2010 that targeted tax non-compliance by U.S. taxpayers with foreign accounts. Although enforcement did not commence until July 2014, FATCA required U.S. persons to report their foreign financial accounts and offshore assets. Additionally, FATCA

4

required foreign financial institutions to report to the Internal Revenue Service ("IRS") certain financial information about accounts held by U.S. taxpayers or foreign entities in which U.S. taxpayers held a substantial ownership interest. FATCA also targeted the non-reporting and the non-withholding (30% on certain U.S. source payments made to foreign entities) by U.S. financial institutions based on material misrepresentations about the beneficial owners of the foreign accounts.

14.     An international business corporation ("IBC") was an offshore, untaxed company, formed under the laws of a foreign jurisdiction, which was not permitted to engage in business within the jurisdiction in which it was incorporated. An owner of an IBC could deposit money and transfer stock to an IBC to facilitate banking and securities trading activities while maintaining a level of anonymity for the IBC's true owner because an IBC's ownership records were typically not publicly available.

15.     The term "beneficial owner" was defined under the rules of the U.S. Securities and Exchange Commission ("SEC"). It included any person who directly or indirectly shared voting power or investment power (the power to sell a security). When a person or group of persons acquired beneficial ownership of more than 5% of a voting class of a company's equity securities registered under Section 12 of the Securities Exchange Act of 1934, they were required to file a Schedule 13D with the SEC. Schedule 13D reported the acquisition and other information within ten days after the purchase. The schedule was filed with the SEC and was provided to the company that issued the securities and each exchange on which the security was traded. Any material changes in the facts contained in the schedule required a prompt amendment.

5

16.     The term "nominee" referred to a person or firm into whose name securities or other properties were transferred in order to facilitate transactions, while concealing the customer as the actual owner. A "nominee account" was a type of account in which a stockbroker held shares belonging to clients in the name of a sham entity or another individual. The use of nominees and nominee accounts was designed to conceal the true ownership interest of the customer.

17.     "Microcap" or "penny" stocks referred to stocks of publicly traded U.S. companies which have a low market capitalization. Microcap stocks were often subject to price manipulation because they were thinly traded and subject to less regulatory scrutiny than stocks that traded on notable exchanges. Additionally, large blocks of microcap stock were often controlled by a small group of individuals, which enabled those in the group to control or orchestrate manipulative trading in those stocks.

18.     Wash trades were purchases and sales of securities that matched each other in price, volume and time of execution, and involved no change in beneficial ownership. For example, a wash trade took place when Investor A bought 100 shares at $5.00 per share of Company A through Broker A while simultaneously selling 100 shares at $5.00 per share of Company A through Broker B. Matched trades were similar to wash trades but involved a related third person or party who placed one side of the trade. For example, a matched trade took place when Investor A bought 100 shares at $5.00 per share of Company A through a broker, while Investor B, who coordinated with Investor A, simultaneously sold 100 shares at $5.00 per share of Company A through a broker. Both wash trades and matched trades were used to create the appearance that the stock price and volume rose as a result of genuine market demand for the securities.

6

19. A "pump and dump" scheme was a scheme where a group of individuals who control the free trading or allegedly unrestricted shares, also referred to as the "float," of a microcap company fraudulently inflated the share price and trading volume of the targeted public company through, inter alia, wash and matched trades, false and misleading press releases and paid stock promotions. When the target company's share price reached desirable levels, the individuals sold their free trading shares for substantial financial gain.

III. The Fraudulent Scheme

    A. Overview

20. In or about and between January 2009 and September 2014, the defendants ROBERT BANDFIELD, also known as "Bob Bandfield," GREGG MULHOLLAND, also known as "Stamps" and "Charlie Wolf," BRIAN DE WIT, PAULA PSYLLAKIS, KELVIN LEACH, ROHN KNOWLES, CEM CAN, also known as "Jim Can," ANDREW GODFREY, IPC MANAGEMENT SERVICES, LLC, IPC CORPORATE SERVICES INC., IPC CORPORATE SERVICES LLC, LEGACY GLOBAL MARKETS S.A., TITAN INTERNATIONAL SECURITIES INC. and UNICORN INTERNATIONAL SECURITIES LLC, together with others, devised and engaged in a scheme whereby they agreed to: (a) defraud investors and potential investors in various U.S. publicly traded companies through, inter alia, the fraudulent concealment of the true beneficial ownership interests in the various U.S. publicly traded companies, and the engineering of artificial price movements and trading volume in the stocks of the various U.S. publicly traded companies; (b) defraud the United States by impeding, impairing, obstructing and defeating the lawful governmental functions of the IRS in the ascertainment, computation, assessment and collection of revenue;

7

and (c) launder money by facilitating financial transactions to and from the United States, which transactions involved proceeds of fraud in the sale of securities.

21.    In or about and between January 2009 and September 2014, the defendants ROBERT BANDFIELD, also known as "Bob Bandfield," GREGG MULHOLLAND, also known as "Stamps" and "Charlie Wolf," BRIAN DE WIT, PAULA PSYLLAKIS, KELVIN LEACH, ROHN KNOWLES, CEM CAN, also known as "Jim Can," ANDREW GODFREY, IPC MANAGEMENT SERVICES, LLC, IPC CORPORATE SERVICES INC., IPC CORPORATE SERVICES LLC, LEGACY GLOBAL MARKETS S.A., TITAN INTERNATIONAL SECURITIES INC. and UNICORN INTERNATIONAL SECURITIES LLC, together with others, created numerous shell companies and bank accounts through which passed more than $250 million in fraudulent proceeds connected to more than 100 clients.

22.    The defendant GREGG MULHOLLAND, also known as "Stamps" and "Charlie Wolf," controlled a group of approximately a dozen individuals (hereinafter collectively referred to as the "Mulholland Group"), which was responsible for fraudulently manipulating the stock of more than forty U.S. publicly traded companies and then transferring, through attorney escrow accounts associated with five offshore law firms, more than $250 million in fraudulent proceeds into, inter alia, accounts controlled by the Mulholland Group in the U.S. and Canada.

B.    The Undercover Operation

23.    Beginning in approximately November 2012, a law enforcement agent posing as a stock promoter engaged in fraudulent trading activity (the "Undercover Agent") was directed by John Doe 1, an employee for the now-defunct Bahamas-based broker-dealer Gibraltar Global Securities, Inc. whose identity is known to the Grand Jury, to LEGACY and

USCA2 25

TITAN. John Doe 1 advised the Undercover Agent that LEGACY and TITAN could establish an IBC for the Undercover Agent to facilitate his stock promotion business, and that same day, sent an email to the Undercover Agent providing him with the contact information for the defendant KELVIN LEACH.

24.     In or about January 2013, the Undercover Agent, while located in the Eastern District of New York, placed consensually-recorded telephone calls to the defendants KELVIN LEACH and ANDREW GODFREY. During these telephone calls, the Undercover Agent explicitly stated that he was a U.S. citizen who was interested in opening an offshore brokerage account with TITAN. The Undercover Agent added that he was a stock promoter who wanted to conceal his ownership of stocks and money transfers in order to avoid scrutiny from the SEC and the IRS. LEACH informed the Undercover Agent that TITAN did not open individual accounts in the name of U.S. citizens but explained that TITAN could open a brokerage account for the Undercover Agent through an IBC that could be created by IPC CORP.

25.     Shortly thereafter, the defendant ANDREW GODFREY informed the Undercover Agent that IPC CORP could establish a corporate structure that concealed the Undercover Agent's ownership interest in his brokerage account at TITAN, which would provide the Undercover Agent with the desired protection he sought from the SEC and the IRS. Specifically, GODFREY explained that IPC CORP would establish a limited liability company ("LLC") and an IBC for the Undercover Agent and designate IPC CORP's employees as the beneficial owners, or more appropriately, the nominees. In this fraudulent structure designed to conceal the Undercover Agent's control and ownership, the IBC, which opened the Undercover

9

Agent's brokerage account at TITAN, would be owned by the LLC and the Undercover Agent's
name would not be associated with either entity.

26.     In or about October 2013, after the Undercover Agent had paid $3,300 for
the IBC and LLC and the brokerage accounts at LEGACY and TITAN established for him by
IPC CORP to conceal his true beneficial ownership, the Undercover Agent made consensually-
recorded telephone calls to the defendants BRIAN DE WIT and KELVIN LEACH. During
these telephone calls, in furtherance of the Undercover Agent's fraudulent scheme to conceal his
true beneficial ownership of his brokerage account, DE WIT and LEACH confirmed to the
Undercover Agent that IPC CORP had established brokerage accounts, not in his name, but in
the name of the Undercover Agent's designated IBCs.

27.     On or about November 6, 2013, the Undercover Agent met with the
defendants ROBERT BANDFIELD, also known as "Bob Bandfield," and ANDREW
GODFREY at IPC CORP's office in Belize. The entire meeting was recorded by the
Undercover Agent with a recording device. During this meeting, BANDFIELD and GODFREY
explained, in great detail, how IPC CORP assisted U.S. citizens, like the Undercover Agent, in
evading U.S. laws and regulations, including the IRS's reporting requirements, by establishing
sham IBCs and LLCs. To assure the Undercover Agent of IPC CORP's expertise with managing
this fraudulent arrangement and BANDFIELD's own experience in dealing with clients seeking
to manipulate the markets and effectively transfer money and stock into and out of the United
States without leaving a trail, BANDFIELD revealed that he had created TITAN and LEGACY
and had incorporated more than 5,000 sham companies. BANDFIELD then suggested means by
which the Undercover Agent could circumvent the SEC's reporting requirements by concealing
his beneficial ownership of more than five percent of a public company's stock through nominee

10

accounts, and the IRS's reporting requirements by having a nominee sign IRS Forms W-8BEN for the Undercover Agent's IBCs and LLCs. An IRS Form W-8BEN is a form which notifies the IRS that a foreign individual is the beneficial owner of funds that are subject to tax withholding. Finally, BANDFIELD and GODFREY explained that IPC CORP would soon offer its clients prepaid MasterCards that allowed for transfers of up to $50,000 per month, adding, "we can make it so it's not attached to you."

28.    That same day, the Undercover Agent also met with the defendant ROHN KNOWLES in the presence of the defendant ANDREW GODFREY. Consistent with the defendant ROBERT BANDFIELD's explanation of IPC CORP's fraudulent coordination with LEGACY and TITAN, KNOWLES acknowledged that TITAN could not open an account for U.S. citizens, like the Undercover Agent, without IPC CORP's IBC and LLC arrangement. When the Undercover Agent explicitly indicated that he wanted to engage in fraudulent market manipulation through wash trades and matched trades between two accounts controlled by him, KNOWLES stated that he could orchestrate those trades through close coordination with the defendant BRIAN DE WIT at LEGACY, and stated that "me and Brian do it all the time for other clients."

29.    A few months later, on or about March 4, 2014, the Undercover Agent met again with the defendants ROBERT BANDFIELD, also known as "Bob Bandfield," and ANDREW GODFREY at IPC CORP's office in Belize. This meeting was also recorded by the Undercover Agent with a recording device. During this meeting, BANDFIELD and GODFREY touted, inter alia, IPC CORP's success in establishing fraudulent corporate structures, including six IBCs and two LLCs for the Undercover Agent in order to conceal the Undercover Agent's true beneficial ownership of the brokerage accounts at LEGACY, TITAN, UNICORN and two

11

additional broker-dealers. BANDFIELD explained that this "slick" structure was specifically designed to counter U.S. President Barack Obama's new laws, a reference to FATCA. BANDFIELD and GODFREY advised the Undercover Agent that the designated nominees, who included a security guard and courier, would sign any stock purchase agreements on behalf of the IBCs at the Undercover Agent's direction. As payment for IPC CORP's services, the Undercover Agent gave BANDFIELD and GODFREY $9,600 in cash and was informed that IPC CORP would refund the earlier $3,300 paid via PayPal to erase the paper trail.

30.    Following this meeting, the defendant ANDREW GODFREY escorted the Undercover Agent to UNICORN's office where GODFREY introduced the Undercover Agent to the defendant CEM CAN, also known as "Jim Can." GODFREY informed the Undercover Agent that IPC CORP conducted a significant amount of business with UNICORN and that UNICORN expedited the opening of accounts for IPC CORP. After the Undercover Agent explicitly revealed his intentions to manipulate the stock of a publicly traded company, CAN confirmed that IPC CORP's scheme of establishing sham IBCs and LLCs enabled UNICORN to execute trades for U.S. citizens like the Undercover Agent. To further conceal its clients' true beneficial ownership and fraudulent activities, CAN explained that UNICORN provided its clients with unidentifiable debit cards which could be used by UNICORN's clients to pay "consultants" in stock manipulation schemes. CAN also advised the Undercover Agent to keep his wire transfers to Belize under $50,000, and vary the amounts, because a wire transfer of $50,000 and over caused banks to inquire into the source of funds.

31.    Following his return from Belize, the Undercover Agent continued communicating with the defendants ROBERT BANDFIELD, also known as "Bob Bandfield," BRIAN DE WIT, KELVIN LEACH, ROHN KNOWLES, CEM CAN, also known as "Jim Can,"

12

and ANDREW GODFREY, in furtherance of the Undercover Agent's purported scheme to conceal his true beneficial ownership, engage in market manipulation of publicly traded companies, evade reporting requirements and the payment of taxes to the IRS and transfer proceeds of fraud in the sale of securities to and from the United States. For example, on or about April 9, 2014, during a consensually-recorded telephone call between LEACH and the Undercover Agent, LEACH confirmed that any wire transfer requests to TITAN must go through IPC CORP and that IPC CORP's nominee must execute stock transfers. When the Undercover Agent explicitly stated that he wanted to orchestrate trading in the stock of a publicly traded company between LEGACY and TITAN, LEACH responded that TITAN worked well with LEGACY.

C. The Mulholland Group and Other Corrupt Clients

32. After the enactment of FATCA in March 2010, the defendants LEGACY, TITAN and UNICORN put disclaimers on their websites that they would not accept U.S. clients. Contrary to these representations, LEGACY, TITAN and UNICORN continued to have U.S. clients, so long as the clients concealed their U.S. ties through the defendant IPC CORP's fraudulent IBC and LLC structure. Shortly after the enactment of FATCA, the Mulholland Group became one of IPC CORP's largest clients.

33. On or about and between March 21, 2014 and May 22, 2014, law enforcement authorities conducted judicially-authorized wiretaps of two IPC CORP, one TITAN and one LEGACY telephone lines, specifically: 305-671-3493 (IPC), 503-305-3897 (IPC), 305-395-7896 (TIS) and 888-400-5461 (LGM). Additionally, on or about and between May 1, 2014 and May 30, 2014, law enforcement authorities conducted a judicially-authorized wiretap of TITAN telephone line 305-407-8426. These five judicially-authorized wiretaps (collectively, the

13

"IPC-TIS-LGM Wiretaps") and emails obtained through judicially-authorized search warrants revealed that the fraudulent IBC and LLC structure devised and controlled by the defendant ROBERT BANDFIELD, also known as "Bob Bandfield," and his co-conspirators, extended far beyond the arrangement with the Undercover Agent.

34.    The results of the email search warrants confirmed that the defendants ROBERT BANDFIELD, also known as "Bob Bandfield," BRIAN DE WIT, PAULA PSYLLAKIS, KELVIN LEACH, ROHN KNOWLES, CEM CAN, also known as "Jim Can," ANDREW GODFREY, IPC MANAGEMENT SERVICES, LLC, IPC CORPORATE SERVICES INC., IPC CORPORATE SERVICES LLC, LEGACY GLOBAL MARKETS S.A., TITAN INTERNATIONAL SECURITIES INC. and UNICORN INTERNATIONAL SECURITIES LLC, together with others, were engaged in a scheme with more than 100 U.S. and foreign clients (the "Corrupt Clients"), including the defendant GREGG MULHOLLAND, also known as "Stamps" and "Charlie Wolf," to evade, inter alia, U.S. securities and tax laws and conceal their fraudulent activity and illegal proceeds through IPC CORP's fraudulent IBC and LLC structure.

35.    For example, on or about September 6, 2013, the defendant BRIAN DE WIT sent an email to the defendant ANDREW GODFREY requesting that UNICORN waive its account opening fee of $1,000 because "we agreed to open accounts at each others['] firms and we don't charge such a fee . . . ." On or about November 6, 2013, the defendant ROBERT BANDFIELD, also known as "Bob Bandfield," sent an email to Corrupt Client 1, an individual whose identity is known to the Grand Jury, forwarding IRS Form W-8BEN signed by GODFREY as the nominee for the IBC in response to a request received by Corrupt Client 1 from a U.S. transfer agent. On or about December 4, 2013, the defendant KELVIN LEACH sent

14

an email to BANDFIELD informing BANDFIELD that a client requested that $75,000 be wire transferred from a brokerage account to a law firm in the United States. On or about December 16, 2013, the defendant ROHN KNOWLES sent an email to BANDFIELD, copying LEACH, in which he forwarded an email from Corrupt Client 2, an individual whose identity is known to the Grand Jury, requesting six wire transfers totaling $1.9 million for various IBCs.

36.    The IPC-TIS-LGM-Wiretaps further confirmed that the defendants, together with others, were engaged in a scheme to evade, inter alia, U.S. securities and tax laws and conceal their fraudulent activity and illegal proceeds through IPC CORP's fraudulent IBC and LLC structure. For example, on or about March 24, 2014, Corrupt Client 3, an individual whose identity is known to the Grand Jury, asked the defendant ANDREW GODFREY, whose name he received from the defendant KELVIN LEACH, to have IPC CORP establish an IBC for him to enable him to trade through TITAN. On or about March 26, 2014, Corrupt Client 4, an individual whose identity is known to the Grand Jury, called GODFREY and stated that his biggest concern was getting his funds wired back into the United States. In response, GODFREY advised Corrupt Client 4 that he/she could use his/her IBC account at UNICORN and UNICORN's unidentifiable debit cards to transfer his funds. On or about March 28, 2014, Corrupt Client 5, an individual whose identity is known to the Grand Jury, called the defendant ROHN KNOWLES to inquire about his trading order and wire transfers to a third party. In response, KNOWLES stated that TITAN could execute third-party wire transfers but reminded Corrupt Client 5 that he needed to send the wire instructions through GODFREY or "whoever the signatory is on the account." On or about May 19, 2014, GODFREY called Corrupt Client 6, an individual whose identity is known to the Grand Jury, and stated that IPC CORP's fraudulent scheme using sham IBC and LLC structures was created to evade the IRS, specifically FATCA.

15

On or about May 29, 2014, LEACH called a representative at Cayman National Bank to confirm three wire transfers, including one wire transfer that was requested in the name of an IBC.

    D.    The Stock Manipulation Schemes

    37.    The Corrupt Clients, including the defendant GREGG MULHOLLAND, also known as "Stamps" and "Charlie Wolf," utilized IPC CORP's fraudulent IBC and LLC structure and brokerage accounts in the names of the IBCs at offshore brokerage firms such as LEGACY, TITAN and UNICORN to facilitate pump and dump schemes involving hundreds of microcap or penny stocks.

    (i)    Cannabis-Rx, Inc.

    38.    Cannabis-Rx, Inc. ("CANA") was a microcap or penny stock company which traded under the ticker symbol CANA on the OTC markets. CANA's purported business plan consisted of serving the real estate needs of the regulated cannabis industry in states where such business was licensed and permitted. CANA's purported business plan also consisted of purchasing real estate assets and leasing facilities to licensed marijuana growers and dispensary owners for their operations.

    39.    The defendants ROBERT BANDFIELD, also known as "Bob Bandfield," BRIAN DE WIT, PAULA PSYLLAKIS, KELVIN LEACH, ROHN KNOWLES, CEM CAN, also known as "Jim Can," ANDREW GODFREY, IPC MANAGEMENT SERVICES, LLC, IPC CORPORATE SERVICES INC., IPC CORPORATE SERVICES LLC, LEGACY GLOBAL MARKETS S.A., TITAN INTERNATIONAL SECURITIES INC. and UNICORN INTERNATIONAL SECURITIES LLC, together with others, conspired with certain of the Corrupt Clients to fraudulently manipulate the price and volume of CANA's stock. Specifically, the true beneficial owners of a significant amount of CANA's free trading or unrestricted stock

16

had concealed their ownership interest through BANDFIELD and IPC CORP's fraudulent IBC and LLC structure, and DE WIT and PSYLLAKIS, through LEGACY, were actively involved in the fraudulent manipulation of CANA's stock price and volume.  For example, on or about and between March 27, 2014 and April 16, 2014, DE WIT and Corrupt Client 7, an individual whose identity is known to the Grand Jury, engaged in a series of orchestrated transactions which ~~resulted in CANA's stock price plummeting from $13.77 per share on March 27, 2014 to $0.50~~ per share on April 16, 2014.  On March 28, 2014 alone, DE WIT received at least five telephone calls from Corrupt Client 7 with specific instructions to fraudulently orchestrate the trading of CANA's stock.  That day, CANA's stock, which had not traded since July 2, 2013, had a trading volume of 189,800 shares and the share price plummeted from the previous day's closing price of $13.77 per share to a closing price of $1.90 per share.

> (ii)    Vision Plasma Systems, Inc.

40.    Vision Plasma Systems, Inc. ("VLNX"), formerly known as Bonanza Land Holdings Inc. and vLinx Technology Inc., was a microcap or penny stock company which traded under the ticker symbol VLNX on the OTC markets.  VLNX purported to be a technology company that manufactured and sold portable plasma gasification systems for the remediation of hazardous wastes.

41.    The defendants ROBERT BANDFIELD, also known as "Bob Bandfield," BRIAN DE WIT, PAULA PSYLLAKIS, KELVIN LEACH, ROHN KNOWLES, CEM CAN, also known as "Jim Can," ANDREW GODFREY, IPC MANAGEMENT SERVICES, LLC, IPC CORPORATE SERVICES INC., IPC CORPORATE SERVICES LLC, LEGACY GLOBAL MARKETS S.A., TITAN INTERNATIONAL SECURITIES INC. and UNICORN INTERNATIONAL SECURITIES LLC conspired with the defendant GREGG

MULHOLLAND, also known as "Stamps" and "Charlie Wolf," and others, to fraudulently manipulate the price and volume of VLNX's stock. Specifically, in or about June 2011, approximately 100 million shares of VLNX were issued to ten different IBCs created by IPC CORP. MULHOLLAND paid for and beneficially owned nine of these ten IBCs, which in turn owned approximately 84 million shares of VLNX stock. Thus, MULHOLLAND, together with the Mulholland Group, beneficially owned and controlled at least 84 percent of the free-trading shares of VLNX, which was concealed from the investing public in violation of SEC rules and regulations.

42.     On August 16, 2012, AwesomePennyStocks.com and other penny stock promotional websites sent email blasts to their subscribers that VLNX was their new "pick." Prior to August 16, 2012, there was no trading activity in VLNX. On August 16, 2012, the daily trading volume was 308 million shares and the stock price, which opened at $0.14 increased to an intraday high of $0.39 before closing at $0.30. On August 16, 2012, the nine IBCs beneficially owned and controlled by the defendant GREGG MULHOLLAND, also known as "Stamps" and "Charlie Wolf," sold more than 83 million shares of VLNX, primarily through LEGACY, resulting in approximately $21 million in proceeds.

(iii)     Cynk Technology Corp.

43.     Cynk Technology Corp. ("CYNK"), formerly known as Introbuzz, was a microcap or penny stock company which traded under the ticker symbol CYNK on the OTC markets. CYNK purported to be developing a web-based social network service in which people would pay for introductions to celebrities, business contacts and "even the right squash player."

44.     The defendants ROBERT BANDFIELD, also known as "Bob Bandfield," BRIAN DE WIT, PAULA PSYLLAKIS, KELVIN LEACH, ROHN KNOWLES, CEM CAN,

18

also known as "Jim Can," ANDREW GODFREY, IPC MANAGEMENT SERVICES, LLC, IPC

CORPORATE SERVICES INC., IPC CORPORATE SERVICES LLC, LEGACY GLOBAL

MARKETS S.A., TITAN INTERNATIONAL SECURITIES INC. and UNICORN

INTERNATIONAL SECURITIES LLC conspired with the defendant GREGG

MULHOLLAND, also known as "Stamps" and "Charlie Wolf," and others to fraudulently

~~manipulate the price and volume of CYNK's stock. In or about and between April 2012 and~~

September 2012, the Mulholland Group wire transferred $1,524,000 from an account controlled

by the Mulholland Group to an Introbuzz account at Bank of America. In June 2012,

approximately 75 percent of Introbuzz's initial public offering of stock was purchased by

relatives and close associates of Co-Conspirator 1, a member of the Mulholland Group whose

identity is known to the Grand Jury. On or about August 29, 2012, PSYLLAKIS sent an email

to Co-Conspirator 1 informing him that he needed BANDFIELD's assistance for the placement

of Co-Conspirator 1's "Chinese nationals" as the "nominee shareholders" of various IBCs,

including three IBCs that later owned the vast majority of CYNK's free trading shares.

MULHOLLAND paid IPC CORP for these IBCs.

45.     In or about May 2013, Co-Conspirator 1 reserved the name "Cynk

Technology Corp." with the Secretary of State of Nevada. On or about June 21, 2013, Introbuzz

announced that it had amended its name to CYNK Technology Corp. and updated its ticker

symbol to CYNK. Throughout 2013, Co-Conspirator 1's relatives and close associates sold their

CYNK shares to three IBCs controlled by the Mulholland Group.

46.     On or about May 15, 2014, the defendant GREGG MULHOLLAND, also

known as "Stamps" and "Charlie Wolf," placed a telephone call to the defendant BRIAN DE

WIT, and in reference to CYNK stock, MULHOLLAND stated that "[Co-Conspirator 1 is]

19

working on the CEO scenario right now, you know, resignation," and that "we have all the free

trading [shares]." Prior to this conversation between MULHOLLAND and DE WIT, there had

been no trading in CYNK stock since on or about April 9, 2014, or for 24 trading days. On or

about May 15, 2014, the stock closed at $0.06 per share following trading of 1,900 shares.

Beginning on or about June 17, 2014, trading activity in CYNK increased to 367,400 shares

traded on that day, and the stock price increased from an opening price of $0.18 per share to a

closing price of $2.25 per share. From approximately June 17, 2014 through July 10, 2014,

despite having no revenue or assets, more than 2 million shares were traded, CYNK's share price

increased from a closing price of $2.25 per share to a closing price of $13.90 per share, and

CYNK was valued at more than $4 billion as a result of the fraudulent manipulation by the

Mulholland Group. A number of offshore brokerage firms, including LEGACY and TITAN,

traded in CYNK stock. On July 11, 2014, the SEC suspended trading in CYNK.

COUNT ONE
(Conspiracy to Commit Securities Fraud)

47.     The allegations contained in paragraphs one through forty-six are

realleged and incorporated as though fully set forth in this paragraph.

48.     In or about and between January 2009 and September 2014, both dates

being approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendants ROBERT BANDFIELD, also known as "Bob Bandfield," GREGG

MULHOLLAND, also known as "Stamps" and "Charlie Wolf," BRIAN DE WIT, PAULA

PSYLLAKIS, KELVIN LEACH, ROHN KNOWLES, CEM CAN, also known as "Jim Can,"

ANDREW GODFREY, IPC MANAGEMENT SERVICES, LLC, IPC CORPORATE

SERVICES INC., IPC CORPORATE SERVICES LLC, LEGACY GLOBAL MARKETS S.A.,

TITAN INTERNATIONAL SECURITIES INC. and UNICORN INTERNATIONAL

20

SECURITIES LLC, together with others, did knowingly and willfully conspire to use and employ manipulative and deceptive devices and contrivances, contrary to Rule 10b-5 of the Rules and Regulations of the United States Securities and Exchange Commission, Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which would and did operate as a fraud and deceit upon investors and potential investors in various publicly traded companies, in connection with the purchase and sale of investments in the various publicly traded companies, directly and indirectly, by use of means and instrumentalities of interstate commerce and the mails, contrary to Title 15, United States Code, Sections 78j(b) and 78ff.

49.     In furtherance of the conspiracy and to effect its objects, within the Eastern District of New York and elsewhere, the defendants ROBERT BANDFIELD, also known as "Bob Bandfield," GREGG MULHOLLAND, also known as "Stamps" and "Charlie Wolf," BRIAN DE WIT, PAULA PSYLLAKIS, KELVIN LEACH, ROHN KNOWLES, CEM CAN, also known as "Jim Can," ANDREW GODFREY, IPC MANAGEMENT SERVICES, LLC, IPC CORPORATE SERVICES INC., IPC CORPORATE SERVICES LLC, LEGACY GLOBAL MARKETS S.A., TITAN INTERNATIONAL SECURITIES INC. and UNICORN INTERNATIONAL SECURITIES LLC, together with others, committed and caused to be committed, among others, the following:

21

## OVERT ACTS

a.  On or about August 29, 2012, PSYLLAKIS sent an email to Co-Conspirator 1, a member of the Mulholland Group whose identity is known to the Grand Jury, in which she stated that Co-Conspirator 1 needed the assistance of BANDFIELD with the placement of Co-Conspirator 1's "Chinese nationals" as the "nominee shareholders" of various IBCs established by IPC CORP.

b.  On or about January 24, 2013, during a telephone call between the Undercover Agent and LEACH, LEACH stated, in part, that the Undercover Agent should contact IPC CORP to establish an IBC.

c.  On or about January 25, 2013, during a telephone call between the Undercover Agent and GODFREY, GODFREY stated, in part, that IPC CORP would set up an LLC and an IBC for the Undercover Agent because the Undercover Agent was an American.

d.  On or about January 25, 2013, GODFREY sent an email to the Undercover Agent providing wire transfer instructions for IPC CORP and a list of IBCs and LLCs from which the Undercover Agent could choose his IBCs and LLCs.

e.  On or about October 31, 2013, LEACH sent an email to the Undercover Agent confirming receipt of $60,000 from the Undercover Agent via wire transfer to fund the Undercover Agent's IBC brokerage account at TITAN.

f.  During a meeting on or about November 6, 2013 at IPC CORP's office in Belize City, Belize, between BANDFIELD, GODFREY and the Undercover Agent, BANDFIELD explained that IPC CORP could create an IBC and LLC corporate structure for the Undercover Agent.

22

g.      During a meeting on or about November 6, 2013 at TITAN's office in Belize City, Belize, between KNOWLES and the Undercover Agent, KNOWLES confirmed that TITAN and LEGACY executed wash trades and matched trades for clients.

h.      During a meeting on or about March 4, 2014 at UNICORN's office in Belize City, Belize, between CAN, GODFREY and the Undercover Agent, CAN confirmed that IPC CORP's IBC and LLC structure enabled UNICORN to deal with U.S. citizens.

i.      During a telephone call on or about March 31, 2014 between DE WIT and Corrupt Client 7, DE WIT stated, in reference to trading CANA stock, "I thought I could see Kelvin [LEACH] in there too, so maybe he is in there grabbing some, and together we will try to do what we can."

j.      On or about March 31, 2014, KNOWLES confirmed in a telephone call with an unidentified individual that KNOWLES had sold 57,100 shares of CANA stock at $1.476 per share.

k.      During a telephone call on or about April 29, 2014 between BANDFIELD and Corrupt Client 8, an individual whose identity is known to the Grand Jury, BANDFIELD stated, in part, "right now, most of our work is securities, surprisingly enough. We see a lot of IPOs and lot of penny stock, OTC stock, pink sheets and all that. We trade a lot of it through companies we set up. Probably 99 percent of our business or 98 percent right now is this kind of stock."

l.      On or about May 6, 2014, Co-Conspirator 1 called a representative of IPC CORP and asked to speak to GODFREY to "get a couple of accounts opened up."

23

m.      During a telephone call on or about May 9, 2014 between MULHOLLAND and GODFREY, MULHOLLAND stated, in part, "just chasing down to see if you have any more names for those IBCs that we bought . . . we talked and you had five or so."

n.      During a telephone call on or about May 15, 2014 between MULHOLLAND and DE WIT, MULHOLLAND stated that his group controlled all the free trading shares of CYNK stock.

(Title 18, United States Code, Sections 371 and 3551 et seq.)

COUNT TWO
(Conspiracy to Defraud the United States)

50.     The allegations contained in paragraphs one through forty-six are realleged and incorporated as though fully set forth in this paragraph.

51.     In or about and between November 2012 and September 2014, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ROBERT BANDFIELD, also known as "Bob Bandfield," CEM CAN, also known as "Jim Can," and ANDREW GODFREY, together with others, did knowingly and willfully conspire to defraud the United States by impeding, impairing, obstructing and defeating the lawful governmental functions of the Internal Revenue Service ("IRS") in the ascertainment, computation, assessment and collection of revenue, specifically, causing the preparation of fraudulent Forms W-8BEN.

52.     In furtherance of the conspiracy and to effect its objects, within the Eastern District of New York and elsewhere, the defendants ROBERT BANDFIELD, also known as "Bob Bandfield," ANDREW GODFREY and CEM CAN, also known as "Jim Can," together with others, committed and caused to be committed, among others, the following:

24

## OVERT ACTS

a.       During a meeting on or about November 6, 2013 at IPC CORP's office in Belize City, Belize, between BANDFIELD, GODFREY and the Undercover Agent, BANDFIELD and GODFREY confirmed that the Undercover Agent would not be subject to the IRS's reporting requirements because IPC CORP's designated nominee would sign the stock purchase agreements and the IRS Forms W-8BEN for the Undercover Agent's IBCs and LLCs.

b.       During a meeting on or about March 4, 2014 at UNICORN's office in Belize City, Belize, between CAN, GODFREY and the Undercover Agent, CAN advised the Undercover Agent that having a loan agreement with his IBC would allow him to avoid any issues with U.S. tax regulators.

c.       On or about November 6, 2013, BANDFIELD sent an email to Corrupt Client 1 forwarding an IRS Form W-8BEN signed by GODFREY as the nominee for Corrupt Client 1's IBC.

(Title 18, United States Code, Sections 371 and 3551 et seq.)

## COUNT THREE
### (Money Laundering Conspiracy)

53.       The allegations contained in paragraphs one through forty-six are realleged and incorporated as though fully set forth in this paragraph.

54.       In or about and between January 2009 and September 2014, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ROBERT BANDFIELD, also known as "Bob Bandfield," GREGG MULHOLLAND, also known as "Stamps" and "Charlie Wolf," BRIAN DE WIT, PAULA PSYLLAKIS, KELVIN LEACH, ROHN KNOWLES, CEM CAN, also known as "Jim Can," ANDREW GODFREY, IPC MANAGEMENT SERVICES, LLC, IPC CORPORATE

25

SERVICES INC., IPC CORPORATE SERVICES LLC, LEGACY GLOBAL MARKETS S.A., TITAN INTERNATIONAL SECURITIES INC. and UNICORN INTERNATIONAL SECURITIES LLC, together with others, did knowingly and willfully conspire:

a.      to conduct financial transactions affecting interstate commerce, specifically the interstate wire transfer of money and securities, which transactions involved property represented by a person at the direction of, and with the approval of, a federal official authorized to investigate violations of Title 18, United States Code, Section 1956, to be the proceeds of specified unlawful activity, specifically, fraud in the sale of securities, contrary to Title 15, United States Code, Sections 78j(b) and 78ff, (i) with the intent to promote the carrying on of such specified unlawful activities, contrary to Title 18, United States Code, Section 1956(a)(3)(A), (ii) to conceal and disguise the nature, location, source, ownership and control of property believed to be the proceeds of the specified unlawful activities, contrary to Title 18, United States Code, Section 1956(a)(3)(B), and (iii) to avoid a transaction reporting requirement under state and federal law, contrary to Title 18, United States Code, Section 1956(a)(3)(C); and

b.      to transport, transmit and transfer a monetary instrument and funds from a place in the United States to and through a place outside the United States and to a place in the United States from and through a place outside the United States, (i) with the intent to promote the carrying on of specified unlawful activities, contrary to Title 18, United States Code, Section 1956(a)(2)(A), (ii) to conceal and disguise the nature, location, source, ownership and control of the proceeds of the specified unlawful activities, contrary to Title 18, United States Code, Section 1956(a)(2)(B)(i), and (iii) to avoid a transaction reporting requirement under state and federal law, contrary to Title 18, United States Code, Section 1956(a)(2)(B)(ii).

(Title 18, United States Code, Sections 1956(h) and 3551 et seq.)

26

## COUNT FOUR
### (Securities Fraud – VLNX)

55.     The allegations contained in paragraphs one through forty-six are realleged and incorporated as though fully set forth in this paragraph.

56.     In or about and between June 2011 and September 2012, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ROBERT BANDFIELD, also known as "Bob Bandfield," GREGG MULHOLLAND, also known as "Stamps" and "Charlie Wolf," BRIAN DE WIT, PAULA PSYLLAKIS, ANDREW GODFREY, IPC MANAGEMENT SERVICES, LLC, IPC CORPORATE SERVICES INC., IPC CORPORATE SERVICES LLC and LEGACY GLOBAL MARKETS S.A., together with others, did knowingly and willfully use and employ one or more manipulative and deceptive devices and contrivances, contrary to Rule 10b-5 of the Rules and Regulations of the United States Securities and Exchange Commission, Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing one or more devices, schemes and artifices to defraud; (b) making one or more untrue statements of material fact and omitting to state one or more material facts necessary in order to make the statements made, in light of the circumstances in which they were made, not misleading; and (c) engaging in one or more acts, practices and courses of business which would and did operate as a fraud and deceit upon one or more investors or potential investors in VLNX, in connection with the purchases and sales of investments in VLNX, directly and indirectly, by use of means and instrumentalities of interstate commerce and the mails.

(Title 15, United States Code, Sections 78j(b) and 78ff; Title 18, United States Code, Sections 2 and 3551 et seq.)

27

## COUNT FIVE
(Securities Fraud – CYNK)

57.     The allegations contained in paragraphs one through forty-six are realleged and incorporated as though fully set forth in this paragraph.

58.     In or about and between April 2012 and July 2014, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ROBERT BANDFIELD, also known as "Bob Bandfield," GREGG MULHOLLAND, also known as "Stamps" and "Charlie Wolf," BRIAN DE WIT, PAULA PSYLLAKIS, ANDREW GODFREY, IPC MANAGEMENT SERVICES, LLC, IPC CORPORATE SERVICES INC., IPC CORPORATE SERVICES LLC and LEGACY GLOBAL MARKETS S.A., together with others, did knowingly and willfully use and employ one or more manipulative and deceptive devices and contrivances, contrary to Rule 10b-5 of the Rules and Regulations of the United States Securities and Exchange Commission, Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing one or more devices, schemes and artifices to defraud; (b) making one or more untrue statements of material fact and omitting to state one or more material facts necessary in order to make the statements made, in light of the circumstances in which they were made, not misleading; and (c) engaging in one or more acts, practices and courses of business which would and did operate as a fraud and deceit upon one or more investors or potential investors in CYNK, in connection with the purchases and sales of investments in CYNK, directly and indirectly, by use of means and instrumentalities of interstate commerce and the mails.

(Title 15, United States Code, Sections 78j(b) and 78ff; Title 18, United States Code, Sections 2 and 3551 et seq.)

28

## CRIMINAL FORFEITURE ALLEGATION
## FOR COUNTS ONE, FOUR AND FIVE

59.     The United States hereby gives notice to the defendants charged in Counts One, Four and Five that, upon their conviction of any such offenses, the government will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of such offenses to forfeit any property, real or personal, which constitutes or is derived from proceeds traceable to such offenses.

60.     If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

a.      cannot be located upon the exercise of due diligence;

b.      has been transferred or sold to, or deposited with, a third party;

c.      has been placed beyond the jurisdiction of the court;

d.      has been substantially diminished in value; or

e.      has been commingled with other property which cannot be divided

without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

29

## CRIMINAL FORFEITURE ALLEGATION
## FOR COUNT THREE

61.    The United States hereby gives notice to the defendants that, upon their conviction of the offense charged in Count Three, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(1), which requires any person convicted of such offense to forfeit any property, real or personal, involved in such offense, or any property traceable to such property.

62.    If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

      a.    cannot be located upon the exercise of due diligence;

      b.    has been transferred or sold to, or deposited with, a third party;

      c.    has been placed beyond the jurisdiction of the court;

      d.    has been substantially diminished in value; or

      e.    has been commingled with other property which cannot be divided

without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to

30

seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(1); Title 21, United States Code, Section 853(p))

A TRUE BILL

_____
FOREPERSON

_____
ROBERT L. CAPERS
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

BY _____
UNITED STATES ATTORNEY
PURSUANT TO 28 C.F.R. 0.136

31

USCA2 48

F. #2013R00505
FORM DBD-34
JUN. 85

No. *14 CR 476 (S-2) (ILG)*

# UNITED STATES DISTRICT COURT

### EASTERN *District of* NEW YORK

### CRIMINAL DIVISION

## THE UNITED STATES OF AMERICA

*vs.*

*ROBERT BANDFIELD, et al.,*

Defendants.

# SUPERSEDING INDICTMENT

(T. 15, U.S.C., §§ 78j(b) and 78ff; T. 18, U.S.C., §§ 371, 981(a)(1)(C), 982(a)(1),
1956(h), 2 and 3551 et seq.; T. 21, U.S.C., § 853(p); T. 28, U.S.C., § 2461(c))

*A true bill.*

_____
_____ *Foreperson*

*Filed in open court this* _____ *day,*

*of* _____ *A.D. 20* _____

_____
*Clerk*

*Bail, $* _____

**Winston M. Paes, Jacquelyn M. Kasulis, Michael T. Kielty**
**Assistant U.S. Attorneys / 718-254-6023 (Paes)**

USCA2 49

**INFORMATION SHEET**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

1.  Title of Case: <u>United States v. Robert Bandfield, et al.</u>  14 - 476 (S-2)(ILG)

2.  Related Magistrate Docket Number(s): <u>N/A</u>

3.  Arrest Date: <u>N/A</u>

4.  Nature of offense(s):  ☒  Felony
                          ☐  Misdemeanor

5.  Related Cases - Title and Docket No(s). (Pursuant to Rule 50.3.2 of the Local
    E.D.N.Y. Division of Business Rules): <u>N/A</u>

6.  Projected Length of Trial:    Less than 6 weeks   ☒
                                  More than 6 weeks   ☐

7.  County in which crime was allegedly committed: <u>Brooklyn</u>
    (Pursuant to Rule 50.1(d) of the Local E.D.N.Y. Division of Business Rules)

8.  Was any aspect of the investigation, inquiry and prosecution giving rise to the case
    pending or initiated before March 10, 2012.[1]    ☐ Yes  ☒ No

9.  Has this indictment/information been ordered sealed?    ☐ Yes  ☒ No

10. Have arrest warrants been ordered?    ☐ Yes  ☒ No

11. Is there a capital count included in the indictment?    ☐ Yes  ☒ No

ROBERT L. CAPERS
UNITED STATES ATTORNEY

By: _____
Winston M. Paes
Michael T. Keilty
Assistant U.S. Attorneys
718-254-6023/6370

_____
[1]    Judge Brodie will not accept cases that were initiated before March 10, 2012.

Rev. 10/04/12

AO 245B (Rev. 11/16)    Judgment in a Criminal Case
                        Sheet 1

# UNITED STATES DISTRICT COURT

Eastern District of New York

| | |
|---|---|
| UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE** |
| v. | |
| | Case Number: CR-14-00476-01 (S-2) (ILG) |
| ROBERT BANDFIELD, | USM Number: 05625-104 |
| also known as "Bob Bandfield" | |
| | Savannah Stevenson, Esq. |
| | Defendant's Attorney |

**FILED**
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ FEB 10 2017 ★

BROOKLYN OFFICE

## THE DEFENDANT:

☑ pleaded guilty to count(s)   (3) of superseding indictment CR-14-00476 (S-2)

☐ pleaded nolo contendere to count(s)
   which was accepted by the court.

☐ was found guilty on count(s)
   after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 USC §1956(h) and §1956(a)(1) | Money laundering conspiracy | 9/30/2014 | 3 |

The defendant is sentenced as provided in pages 2 through ___6___ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s)

☑ Count(s)   (all remaining & underlying   ☐ is   ☑ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

2/6/2017
Date of Imposition of Judgment

s/I. Leo Glasser, USDJ
Signature of Judge

I. Leo Glasser, U.S. District Judge
Name and Title of Judge

2/8/2017
Date

AO 245B (Rev. 11/16)  Judgment in Criminal Case
        Sheet 2 — Imprisonment

Judgment — Page   2   of    6  

DEFENDANT:  ROBERT BANDFIELD, also known as "Bob Bandfi
CASE NUMBER:  CR-14-00476-01 (S-2) (ILG)

# IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of:

seventy-two (72) months.

☑ The court makes the following recommendations to the Bureau of Prisons:

1) That the defendant be designated to the FCI at Sheridan, Oregon, in order to facilitate family visits.
2) That the defendant be permitted to participate in a residential alcohol treatment program (RDAP).\
3) That he be provided with an appropriate hearing aid.

☑ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

    ☐ at  _____ ☐ a.m.   ☐ p.m.   on  _____ .

    ☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐ before 2 p.m. on  _____ .

    ☐ as notified by the United States Marshal.

    ☐ as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

a _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

AO 245B (Rev. 11/16)  Judgment in a Criminal Case
             Sheet 3 — Supervised Release

| | Judgment—Page | 3 | of | 6 |
|---|---|---|---|---|

DEFENDANT:   ROBERT BANDFIELD, also known as "Bob Bandfi
CASE NUMBER:   CR-14-00476-01 (S-2) (ILG)

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of :    three (3) years.

## MANDATORY CONDITIONS

1.   You must not commit another federal, state or local crime.
2.   You must not unlawfully possess a controlled substance.
3.   You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
        ☐ The above drug testing condition is suspended, based on the court's determination that you
           pose a low risk of future substance abuse. *(check if applicable)*
4.   ☐ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
5.   ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. § 16901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
6.   ☐ You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

AO 245B (Rev. 11/16)  Judgment in a Criminal Case
Sheet 3A — Supervised Release

|  | Judgment—Page | 4 | of | 6 |
|---|---|---|---|---|

DEFENDANT:  ROBERT BANDFIELD, also known as "Bob Bandfi
CASE NUMBER:  CR-14-00476-01 (S-2) (ILG)

# STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1. You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2. After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3. You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4. You must answer truthfully the questions asked by your probation officer.
5. You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6. You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7. You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8. You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9. If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.
13. You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature  _____   Date  _____

AO 245B (Rev. 11/16)    Judgment in a Criminal Case
              Sheet 5 — Criminal Monetary Penalties

Judgment — Page   **5**   of   **6**

DEFENDANT:  ROBERT BANDFIELD, also known as "Bob Bandfi
CASE NUMBER: CR-14-00476-01 (S-2) (ILG)

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | JVTA Assessment* | Fine | Restitution |
|---|---|---|---|---|
| **TOTALS** | $ 100.00 | $ | $ | $ |

☑ The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below.  However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss** | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| | | | |

| **TOTALS** | $ | $ | |
|---|---|---|---|

☐ Restitution amount ordered pursuant to plea agreement  $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f).  All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

    ☐ the interest requirement is waived for the   ☐ fine   ☐ restitution.

    ☐ the interest requirement for the   ☐ fine   ☐ restitution is modified as follows:

* Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245B (Rev. 11/16)   Judgment in a Criminal Case
        Sheet 6B — Schedule of Payments

DEFENDANT:   ROBERT BANDFIELD, also known as "Bob Bandfi
CASE NUMBER:   CR-14-00476-01 (S-2) (ILG)

Judgment—Page   6   of   6  

# ADDITIONAL FORFEITED PROPERTY

The preliminary order of forfeiture dated May 23, 2016 is hereby incorporated into this judgment and commitment order and a copy is annexed hereto.

SLR:LDM:BDM
F. #2013R00505

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ MAY 24 2016 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – – X

UNITED STATES OF AMERICA

    - against -

ROBERT BANDFIELD,

            Defendant.

– – – – – – – – – – – – – – – – X

PRELIMINARY
ORDER OF FORFEITURE

14 CR 476 (ILG)(S-2)

WHEREAS, on or about May 23, 2016, ROBERT BANDFIELD (the "defendant"), entered a plea of guilty to Count Three of the above-captioned Superseding Indictment, which charges money laundering conspiracy in violation of 18 U.S.C. § 1956(h); and

WHEREAS, pursuant to 18 U.S.C. § 982(a)(1), the defendant consents to the entry of a forfeiture money judgment in the amount of one million dollars and no cents ($1,000,000) (the "Forfeiture Money Judgment"), in addition to the forfeiture of all right, title and interest in the property listed in Exhibit A hereto (the "Forfeited Assets"), as property, real or personal, involved in a violation of 18 U.S.C. § 1956(h), or as property traceable thereto; and/or pursuant to 21 U.S.C. § 853(p) as substitute assets.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED, on consent, by and between the United States and the defendant as follows:

1.      Pursuant to 982(a)(1), and 21 U.S.C. § 853(p), the defendant shall forfeit to the United States the full amount of the Forfeiture Money Judgment and all right,



title and interest in the Forfeited Assets. The forfeiture of the Forfeited Assets shall not be credited towards the Forfeiture Money Judgment.

2.      All payments made towards the Forfeiture Money Judgment shall be made by a money order, or a certified or bank checks, payable to the "United States Department of Treasury," with the criminal docket number noted on the face of the checks. The defendant shall cause said checks to be sent by overnight mail to Assistant United States Attorney Brian D. Morris, United States Attorney's Office, Eastern District of New York, 271-A Cadman Plaza East, 7th Floor, Brooklyn, New York 11201.

3.      Upon entry of this Order, the United States Attorney General or her designee is authorized to seize the Forfeited Assets and to conduct any proper discovery, in accordance with Fed. R. Crim. P. 32.2(b)(3) and (c), and to commence any applicable proceeding to comply with statutes governing third-party rights, including giving notice of this Order.

4.      The United States shall publish notice of this Preliminary Order, in accordance with the custom and practice in this district, on the government website www.forfeiture.gov, of its intent to dispose of Forfeited Assets in such a manner as the Attorney General or her designee may direct. The United States may, to the extent practicable, provide direct written notice to any person known or alleged to have an interest in the Forfeited Assets as a substitute for published notice as to those persons so notified.

5.      Any person, other than the defendant, asserting a legal interest in the Forfeited Assets may, within thirty (30) days of the final publication of notice or receipt of notice. or no later than sixty (60) days after the first day of publication on an official

United States v. Robert Bandfield, 14 CR 476 (ILG) (S-2)
Preliminary Order of Forfeiture
Page 2

government website, whichever is earlier, petition the Court for a hearing without a jury to adjudicate the validity of his or her alleged interest in the Forfeited Assets, and for an amendment of the order of forfeiture, pursuant to 21 U.S.C. § 853(n)(6). Any petition filed in response to the notice of forfeiture of the Forfeited Assets must be signed by the petitioner under penalty of perjury and shall set forth the nature and extent of the petitioner's right, title and interest in the property, the time and circumstances of the petitioner's acquisition of the right, title, or interest in the property, any additional facts supporting the petitioner's claim, and relief sought.

6.    The defendant shall not file or interpose any claim or assist others to file or interpose any claim to the Forfeited Assets, or to any assets against which the United States seeks to enforce the Forfeiture Money Judgment in any administrative or judicial proceeding. The defendant shall fully assist the government in effectuating the surrender and forfeiture of the Forfeited Assets and the payment of the Forfeiture Money Judgment to the United States. The defendant shall take whatever steps are necessary to ensure clear title to the Forfeited Assets passes to the United States, including the execution of any and all documents necessary to effectuate the surrender and forfeiture of the Forfeited Assets to the United States. If the Forfeited Assets or Forfeiture Money Judgment, or any portion thereof, is not forfeited to the United States, the United States may seek to enforce this Preliminary Order against any other assets of the defendant up to the value of the Forfeited Assets and the outstanding balance of the Forfeiture Money Judgment, pursuant to 21 U.S.C. § 853(p), the Federal Debt Collection Procedures Act, or any other applicable law.

---

United States v. Robert Bandfield, 14 CR 476 (ILG) (S-2)
Preliminary Order of Forfeiture
Page 3

7.      The defendant knowingly and voluntarily waives his right to any required notice concerning the forfeiture of the monies and/or properties forfeited hereunder, including notice set forth in an indictment or information.  In addition, the defendant knowingly and voluntarily waives his right, if any, to a jury trial on the forfeiture of said monies and/or properties forfeited hereunder, and waives all constitutional, legal, and equitable defenses to the forfeiture of said monies and/or properties, including, but not limited to, any defenses based on principles of double jeopardy, the Ex Post Facto clause of the Constitution, the statute of limitations, venue, or any defense under the Eighth Amendment, including a claim of excessive fines.

8.      Pursuant to Fed. R. Crim. P. 32.2(b)(4)(A) and (B), this Preliminary Order of Forfeiture is made final as to the defendant, and shall be made part of the defendant's sentence and included in his judgment of conviction.  If no third party files a timely claim, this Preliminary Order, together with Supplemental Orders of Forfeiture, if any, shall become the Final Order of Forfeiture, as provided by Fed. R. Crim. P. 32.2(c)(2).  At that time, the properties forfeited herein shall be forfeited to the United States for disposition in accordance with the law.

9.      The United States alone shall hold title to the monies paid by the defendant to satisfy the Forfeiture Money Judgment following the Court's entry of the judgment of conviction. The United States alone shall hold title to the Forfeited Assets following the Court's disposition of all third-party interests, or, if none, following the expiration of the period provided in 21 U.S.C. § 853(n)(2).

10. The forfeiture of the Forfeited Assets and the entry and payment of the Forfeiture Money Judgment shall not be considered a payment of a fine, penalty, restitution loss amount, or any income taxes that may be due, and shall survive bankruptcy.

11. This Preliminary Order shall be binding upon the defendant and the successors, administrators, heirs, assigns and transferees of the defendant, and shall survive the bankruptcy of any of them.

12. This Preliminary Order shall be final and binding only upon the Court "so ordering" the order.

13. The Court shall retain jurisdiction over this action to enforce this Order and to amend it as necessary, pursuant to Fed. R. Crim. P. 32.2(e).

14.    The Clerk of the Court is directed to send, by inter-office mail, five (5) certified copies of this executed Order to FSA Law Clerk, Alexander Teichman, United States Attorney's Office, Eastern District of New York, 271-A Cadman Plaza East, 7th Floor, Brooklyn, New York 11201.

Dated:    Brooklyn, New York
          May 23, 2016

SO ORDERED:

_____
HONORABLE I. LEO GLASSER
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF NEW YORK

<u>EXHIBIT A</u>

ALL RIGHT, TITLE AND INTEREST IN IPC MANAGEMENT SERVICES, LLC, A NEVADA LIMITED LIABILITY COMPANY, TOGETHER WITH ALL ASSETS AND RIGHTS THEREOF, AND ALL PROCEEDS TRACEABLE THERETO;

ALL RIGHT, TITLE AND INTEREST IN IPC CORPORATE SERVICES INC., A BELIZE CORPORATION, TOGETHER WITH ALL ASSETS AND RIGHTS THEREOF, AND ALL PROCEEDS TRACEABLE THERETO;

ALL RIGHT, TITLE AND INTEREST IN IPC CORPORATE SERVICES LLC, A NEVIS, WEST INDIES LIMITED LIABILITY COMPANY, TOGETHER WITH ALL ASSETS AND RIGHTS THEREOF, AND ALL PROCEEDS TRACEABLE THERETO;

ALL RIGHT, TITLE AND INTEREST IN MARIAH INTERNATIONAL LLC, A NEVIS, WEST INDIES LIMITED LIABILITY COMPANY, TOGETHER WITH ALL ASSETS, RIGHTS AND CLAIMS THEREOF, AND ALL PROCEEDS TRACEABLE THERETO;

ONE DASSAULT-BREGUET FALCON 50 AIRCRAFT BEARING SERIAL NUMBER 093 AND REGISTRATION NUMBER N868BT, AND ALL LOG BOOKS AND MAINTENANCE RECORDS PERTAINING THERETO;

ONE RANGE ROVER DEFENDER VEHICLE LOCATED IN SHIPPING CONTAINER NUMBER CONSIGNED TO OR ON BEHALF OF GREGG MULHOLLAND;

ANY AND ALL PROCEEDS FROM THE SALE OF THE REAL PROPERTY AND PREMISES LOCATED AT 30302 MALASPINA ROAD, SAN JUAN CAPISTRANO, CALIFORNIA 92675 RECEIVED BY OR TRANSFERRED THROUGH HONG KONG ATTORNEY RAYMOND CHU FROM DIRECTION LLP, AND ALL PROCEEDS TRACEABLE THERETO;

THE REAL PROPERTY AND PREMISES LOCATED AT 3630 MATHERS AVENUE, WEST VANCOUVER, BRITISH COLUMBIA V7V 2LI, AND ALL PROCEEDS TRACEABLE THERETO;

THE REAL PROPERTY AND PREMISES LOCATED AT 2978 HIGH POINT DRIVE, WHISTLER, BRITISH COLUMBIA V0N 1B2, TOGETHER WITH ANY AND ALL PROCEEDS FROM THE SALE THEREOF;

ANY AND ALL FUNDS ON DEPOSIT IN BELIZE BANK ACCOUNT NUMBER 20011112735 HELD IN THE NAME OF IPC CORPORATE SERVICES, INC., AND ALL PROCEEDS TRACEABLE THERETO;

ANY AND ALL FUNDS ON DEPOSIT IN BELIZE BANK ACCOUNT NUMBER 20011167150 HELD IN THE NAME OF UNICORN INTERNATIONAL SECURITIES, LLC, AND ALL PROCEEDS TRACEABLE THERETO;

ANY AND ALL FUNDS ON DEPOSIT IN BELIZE BANK ACCOUNT NUMBER 20011152624 HELD IN THE NAME OF ALTRIX CAPITAL LIMITED, AND ALL PROCEEDS TRACEABLE THERETO;

ANY AND ALL FUNDS ON DEPOSIT IN
BELIZE BANK ACCOUNT NUMBER
20011147582 HELD IN THE NAME OF
MARIAH INTERNATIONAL LLC, AND
ALL PROCEEDS TRACEABLE
THERETO;

ANY AND ALL FUNDS ON DEPOSIT IN
CAYMAN NATIONAL BANK LIMITED
ACCOUNT NUMBER  SV022-27984
HELD IN THE NAME OF  PINNACLE
FINANCIAL GROUP (CAYMAN)
LIMITED, AND ALL PROCEEDS
TRACEABLE THERETO;

ANY AND ALL FUNDS ON DEPOSIT IN
CAYMAN NATIONAL BANK LIMITED
ACCOUNT NUMBER  SV032-00740
HELD IN THE NAME OF  PINNACLE
FINANCIAL GROUP (CAYMAN)
LIMITED, AND ALL PROCEEDS
TRACEABLE  THERETO;

ANY AND ALL FUNDS ON DEPOSIT IN
CAYMAN NATIONAL BANK LIMITED
ACCOUNT NUMBER  TD023-08931
HELD IN THE NAME OF  PINNACLE
FINANCIAL GROUP (CAYMAN)
LIMITED, AND ALL PROCEEDS
TRACEABLE THERETO;

ANY AND ALL FUNDS ON DEPOSIT IN
CAYMAN NATIONAL BANK LIMITED
ACCOUNT NUMBER TD203-09046
HELD IN THE NAME OF PINNACLE
FINANCIAL GROUP (CAYMAN)
LIMITED, AND ALL PROCEEDS
TRACEABLE THERETO;

ANY AND ALL FUNDS ON DEPOSIT IN
CALEDONIAN GROUP SERVICES
LIMITED ACCOUNT NUMBER
172570004 HELD IN THE NAMES OF
TITAN INTERNATIONAL
SECURITIES, INC., AND LEGACY

GLOBAL MARKETS, S.A., AND ALL
PROCEEDS TRACEABLE THERETO;

ANY AND ALL FUNDS ON DEPOSIT IN
PAYPAL ACCOUNT NUMBER
209982086965507575 HELD IN THE
NAME OF INTERNATIONAL PRIVACY
CORPORATION, AND ALL PROCEEDS
TRACEABLE THERETO;

ANY AND ALL FUNDS ON DEPOSIT IN
BANK OF AMERICA ACCOUNT
NUMBER 485005922520 HELD IN THE
NAME OF IPC MANAGEMENT
SERVICES, LLC, AND ALL PROCEEDS
TRACEABLE THERETO;

ANY AND ALL FUNDS ON DEPOSIT IN
WELLS FARGO BANK, NA ACCOUNT
NUMBER 8711761661 HELD IN THE
NAME OF IPC MANAGEMENT
SERVICES, LLC D/B/A
INTERNATIONAL PRIVACY
CORPORATION (IPC) CORPORATE
SERVICES, AND ALL PROCEEDS
TRACEABLE THERETO;

ANY AND ALL FUNDS ON DEPOSIT IN
CITIBANK, NA ACCOUNT NUMBER
0500387295 HELD IN THE NAME OF IPC
MANAGEMENT SERVICES, LLC D/B/A
INTERNATIONAL PRIVACY
CORPORATION (IPC) CORPROATE
SERVICES, AND ALL PROCEEDS
TRACEABLE THERETO;

ANY AND ALL SECURITIES OR FUNDS
ON DEPOSIT IN BEAUFORT
SECURITIES LIMITED ACCOUNT
NUMBER A0173401 HELD IN THE
NAME OF UNICORN INTERNATIONAL
SECURITIES LLC, AND ALL
PROCEEDS TRACEABLE THERETO;

2

ANY AND ALL SECURITIES OR FUNDS ON DEPOSIT IN BEAUFORT ASSET CLEARING ACCOUNT NUMBER A0059568 HELD IN THE NAME OF TITAN INTERNATIONAL SECURITIES, INC., AND ALL PROCEEDS TRACEABLE THERETO;

ANY AND ALL SECURITIES OR FUNDS ON DEPOSIT IN BEAUFORT ASSET CLEARING ACCOUNT NUMBER A0068841 HELD IN THE NAME OF LEGACY GLOBAL MARKETS, S.A., AND ALL PROCEEDS TRACEABLE THERETO;

ANY AND ALL FUNDS ON DEPOSIT IN HERMES BANK ACCOUNT NUMBER 011002000153202 HELD IN THE NAME OF TITAN INTERNATIONAL SECURITIES, INC., AND ALL PROCEEDS TRACEABLE THERETO;

ANY AND ALL FUNDS ON DEPOSIT IN HERMES BANK ACCOUNT NUMBER 011002000180716 HELD IN THE NAME OF TITAN INTERNATIONAL SECURITIES, INC., AND ALL PROCEEDS TRACEABLE THERETO; ANY AND ALL FUNDS ON DEPOSIT IN FIRST CARIBBEAN INTERNATIONAL BANK ACCOUNT NUMBER 102186247 HELD IN THE NAME OF TIGER PARTNERS, LLC, AND ALL PROCEEDS TRACEABLE THERETO;

ANY AND ALL FUNDS ON DEPOSIT IN SAXO BANK ACCOUNT NUMBER 179638 HELD IN THE NAME OF UNICORN INTERNATIONAL SECURITIES, LLC, AND ALL PROCEEDS TRACEABLE THERETO;

ANY AND ALL FUNDS ON DEPOSIT IN SAXO BANK ACCOUNT NUMBER 176862INET HELD IN THE NAME OF TITAN INTERNATIONAL SECURITIES, INC., AND ALL PROCEEDS TRACEABLE THERETO;

ANY AND ALL FUNDS ON DEPOSIT IN HERITAGE INTERNATIONAL BANK & TRUST LIMITED ACCOUNT NUMBER 704871 HELD IN THE NAME OF BELLE ISLE INVESTMENTS LIMITED, AND ALL PROCEEDS TRACEABLE THERETO;

ANY AND ALL FUNDS ON DEPOSIT IN HERITAGE INTERNATIONAL BANK & TRUST LIMITED ACCOUNT NUMBER 704856 HELD IN THE NAME OF VISTA MERCANTILE, LLC, AND ALL PROCEEDS TRACEABLE THERETO;

ANY AND ALL FUNDS ON DEPOSIT IN HERITAGE INTERNATIONAL BANK & TRUST LIMITED ACCOUNT NUMBER 704906 HELD IN THE NAME OF TIMELINE PROPERTIES, INC., AND ALL PROCEEDS TRACEABLE THERETO; and

ANY AND ALL FUNDS AND SECURITIES ON DEPOSIT IN VIEWTRADE SECURITIES, INC. ACCOUNT NUMBER 717-10389-1-7 BCR HELD IN THE NAME OF UNICORN INTERNATIONAL SECURITIES, INC., AND ALL PROCEEDS TRACEABLE THERETO.

3